In re Richard T. YATES, Debtor.

**Suzanne SEYMOUR, Plaintiff,**

**v.**

**Richard T. YATES, Defendant.**

**Bankruptcy No. 88–00871.**
**Adv. No. 88–0115.**

United States Bankruptcy Court,
D. South Carolina.

Aug. 1, 1990.

Mark Wall, Charleston, S.C., for plaintiff.

Dana Wilkinson, Charleston, S.C., for defendant.

## MEMORANDUM OPINION AND ORDER

**WILLIAM THURMOND BISHOP,**
Bankruptcy Judge.

The matter before the Court is the Plaintiff, Suzanne Seymour's complaint seeking a determination of the dischargability of a particular debt. The debt in question arose out of a general partnership known as Firstart. The debtor-Defendant, Richard T. Yates, was a general partner of that partnership, and accordingly is personally liable for partnership debts. At issue here is whether one such debt is non-dischargeable under the terms of Section 523 of the Bankruptcy Code by reason of fraud.

### PROCEDURAL HISTORY

The amended complaint in this case alleges two causes of action. The first cause of action sought the application of the principles of res judicata or collateral estoppel to a judgment and findings issued by the state court, including that court's punitive damage award. The judgment in question arose when, prior to the filing of Yates' bankruptcy petition, Seymour brought suit in state court against Yates, and another general partner in Firstart, Charles F. Philips. A default judgment was entered against both Defendants and a hearing to determine the amount of the judgment was scheduled. After the entry of default, but before the hearing on damages, Yates filed his Chapter 7 petition. Yates was not notified of the damages hearing. That hearing went forward as to Philips only; since Philips did not appear, that proceeding also was a default matter. Because that proceeding involved only Philips, and because it was taken by default, on Plaintiff's Motion for Summary Judgment, this Court found that collateral estoppel would not apply to determine the issue of fraud, or prevent full litigation of those issues to determine the dischargability of this debt. Accordingly, at trial of this matter, the Plaintiff's second cause of action, which alleged that this debt was incurred by means of fraud, was before the Court on its merits. Upon consideration of the pleadings, evidence, and arguments of counsel, the Court finds as follows:

### FINDINGS OF FACT

1. Prior to October 6, 1987, Plaintiff, Suzanne Seymour [Seymour], had invested substantial sums of money in properties owned by a partnership known as Firstart, in which Defendant Richard T. Yates [Yates] was a general partner.

2. Seymour's investments in Firstart were instigated by, and on the advice of Elaine Brinson, a licensed real estate broker.

3. Brinson had made previous investments in Firstart, and contacted Seymour, a social acquaintance, about the possibility of investing in Firstart.

4. All of Seymour's investments were handled through Brinson. Brinson was present with Seymour when investments in Firstart were discussed with the general partners of Firstart. All correspondence and mortgages were handled through Brinson's office.

5. Brinson acted as Seymour's agent in handling the loans from Seymour to Firstart, and securing collateral for those loans.

6. On October 6, 1987, Seymour loaned the sum of $18,000.00 to Firstart. Because of Yates' status as a general partner of Firstart, the obligation of Firstart on said loan also constitutes a liability of Yates personally. To secure such loan, Firstart proposed to give Seymour a mortgage on property located at 3448 Firestone, which Firstart had under contract to purchase.

7. Brinson, who was acting as Seymour's agent, had knowledge that the property in question, 3448 Firestone, was under contract for purchase. Brinson had actual knowledge that the property was not owned by Firstart.

8. Seymour had actual knowledge that the property was not owned by Firstart, but was under contract. Seymour also had constructive knowledge by reason of her agent, Brinson's, knowledge of the same.

9. Firstart never closed on the purchase of 3448 Firestone. Firstart, or its partners,

"killed" the deal to purchase that property at the end of October 1987. One witness at trial, the seller of that property, Robert Kinard, testified that he was notified on October 6, 1987 that Firstart would not go through with the sale. That testimony was based upon a review of an affidavit he executed in January 1989, at which time he reviewed his calendar. The witness had no independent recollection of the that date, and further testified that he continued to discuss the sale of this property with Firstart on several occasions until the end of October. The other witnesses' testimony concerning these continued conversations is consistent with a finding that the decision to terminate the contract was made in late October. Both Charles Philips and Richard Yates testified that the decision not to go forward with the sale was not made until the end of October. This Court finds that the greater weight of the evidence indicates that the decision not to close was made at the end of October of 1987. Additional evidence from Elaine Brinson and Suzanne Seymour indicates that they were advised of the decision not to close on 3448 Firestone in late October, which is consistent with this Court's finding.

10. In late October or early November of 1987, Elaine Brinson was advised that the purchase of 3448 Firestone would not be closed. At that time, Firstart offered to give Seymour a replacement mortgage on other parcels of real estate. Subsequently, Brinson advised Seymour of that decision, and Seymour, Brinson, and Philips met to discuss a replacement mortgage.

11. Philips provided Seymour and Brinson with a list of properties and existing mortgages on those properties, with approximate mortgage balances. A number of properties were discussed by the parties. Seymour and Philips drove around to look at several of these properties.

12. On the advice of Brinson, Seymour did not take a replacement mortgage on any of the properties offered. Brinson advised Seymour that since she would be in third or fourth mortgage position, she must be prepared to pay off existing mortgages to protect her investment should those properties go into foreclosure. On that advice, Seymour refused the offered replacement mortgages.

13. The parties continued to discuss a replacement mortgage until some time in December of 1987. At that time, Firstart made the decision to file a Chapter 7 proceeding and was advised by bankruptcy counsel that any mortgage given for a preexisting debt at that time would be considered a preference, and could be set aside by a Chapter 7 Trustee. At that time, negotiations to give Seymour a replacement mortgage came to a halt.

14. Both Brinson and Seymour are knowledgeable business women. Brinson is a licensed real estate broker, who dealt primarily with commercial real estate. Seymour is a knowledgeable investor, who has other real estate investments in addition to those made with Firstart.

15. Seymour had knowledge, particularly through her agent Brinson, of Firstart's, business operations. Brinson testified that she and the partners in Firstart met and talked frequently about the business and investments in the same.

16. On at least four occasions Seymour made loans to Firstart. It was the normal course of business between these parties to forgo a formal closing of these loans, although the loan was to be secured by a mortgage. The testimony of all witnesses was in concurrence that it was normal for a check to be written to Firstart, and a mortgage to be provided at a later date, sometimes a month to six weeks later.

17. Neither Seymour nor Brinson employed separate counsel to represent them in closing these transactions.

18. Seymour and her agent Brinson knew or should have known that the funds borrowed, which were to be secured by a mortgage on a particular piece of property, would not necessarily be used for improvement on that property.

19. Firstart made its decision to file a Chapter 7 bankruptcy proceeding, and hired counsel for that purpose, in late November or early December of 1987.

20. Firstart filed its Chapter 7 petition on January 20, 1988.

21. Yates filed his Chapter 7 petition on March 18, 1988.

22. Seymour holds no collateral to secure the debt, and thus said debt constitutes an unsecured obligation of both the partnership, Firstart, and Yates.

23. Prior to the institution of this action, Seymour and Yates had met only socially, and Yates personally made no representations of any kind concerning the $18,000.00 loan from Seymour to Firstart.[1]

24. It was stipulated that all the representations complained of were made by a party other than the debtor, Charles Philips, who was also a general partner of the partnership, Firstart.

## CONCLUSIONS OF LAW

◼ In this dischargeability action, the Plaintiff bears the burden of proof, pursuant to Bankruptcy Rule 4005. This Court has held that all nine elements of fraud must be met in a denial of discharge action based on section 523(a)(2)(A). *Fine v. Marks (In re Marks)* 40 B.R. 614, 618 (Bankr.D.S.C.1984), citing *Sylvester v. Stone (In re Stone)* 11 B.R. 209, 212 (Bankr.D.S.C.1981). The Plaintiff has suggested that under section 523(a)(2)(A), a debt may be declared nondischargeable if the Plaintiff proves either actual fraud or "false pretenses." This Court finds that the language of the statute was intended to be descriptive of several related concepts, including concepts which may have different names in different jurisdictions, and not set forth separate bases for nondischargeability. That finding is consistent with, and an extension of, the rulings in *Stone* and *Fine, supra.*

◼ The elements which Plaintiff must prove are as follows:

1) That the Defendant made a representation (or, in this case, that one can be imputed to him);

2) That such representation was false;

3) That such representation was material;

4) That when it was made the Defendant (or his agent) knew it was false;

5) That it was made with the intention that the Plaintiff should act upon it;

6) That the Plaintiff was ignorant of its falsity;

7) That the Plaintiff reasonably relied upon its truth;

8) That the Plaintiff had a right to rely thereon; and

9) That Plaintiff thereby suffered injury.

◼ The Plaintiff herein is unable to meet the burden of proof in this case. In the Amended Complaint, the Plaintiff complains of the following: 1) That Firstart represented that it was the owner of the Firestone property; 2) That Firstart falsely represented that the money borrowed would be used on that property; and 3) That Firstart borrowed $18,000.00 from Seymour while planning a Chapter 7 bankruptcy. The principal issue at trial was whether Firstart or its partners "killed" the deal to purchase the Firestone property at or before the receipt of funds from Seymour. Essentially, Plaintiff alleges that Firstart induced her to loan money to the partnership to be secured by a mortgage on 3448 Firestone, with the knowledge that the purchase of that property would not be closed.

## OWNERSHIP OF 3448 FIRESTONE

The Court finds that the Plaintiff had knowledge, actual or constructive, of the fact that 3448 Firestone, while under contract to Firstart, was not owned by the partnership. Elaine Brinson, who was a real estate broker, and who acted as agent for Seymour in connection with this transaction, testified that she had full knowledge that the Firestone property was not owned by Firstart, but was under contract. No false representation was made as to the ownership of 3448 Firestone; accordingly, there can be no finding of fraud on this point.

---

**1.** Evidence presented at trial shows, however, that Seymour's agent, Elaine Brinson, was ac quainted with Yates at the time of the transaction at issue.

## BORROWING WHILE PLANNING BANKRUPTCY

As to the Plaintiff's claim that Firstart borrowed money while planning a bankruptcy filing, the unrefuted evidence at trial showed that the first discussions concerning bankruptcy took place after the loan from Seymour. Even then, the partners consulted several lawyers before finally making the decision to file bankruptcy some months later. In addition, the Plaintiff's reliance, if any, was not reasonable. The Plaintiff could have easily protected herself by requiring a contemporaneous exchange of the mortgage for the loan, but she failed to do so.

## INTENDED USE OF BORROWED FUNDS

The evidence at trial was conflicting as to whether the Plaintiff, through her agent Brinson, had been told that the funds borrowed were to be used to rehabilitate 3448 Firestone. The Court finds that the Plaintiff has failed to meet her burden of proving all of the elements of fraud on that alleged misrepresentation. In addition to the conflicting testimony of witnesses, the Court notes the various proposals, or loans made by Seymour to Firstart prior to and including the proposal on the Firestone property. Over time, those proposals became less and less specific as to the terms of the loan, and the purpose of borrowing. The Court also notes the general familiarity with the Debtor's business which Elaine Brinson had, and which is imputed to the Plaintiff herself. The preponderance of the evidence indicates the Plaintiff knew or should have known that 100% of loan proceeds would not be invested in the real estate which secured or were to secure the various parcels.

Even if the representation was made to the Plaintiff that the loan proceeds would be used entirely on the property on which the Plaintiff was to have a mortgage, the Court finds that the Plaintiff did not rely on that representation, or if she did, that such reliance was unreasonable. First of all, at least one of the proposals, on the property located at 5 Madden Street, pro-

vided for a loan of $25,000. The proposal stated that $5,000 of those proceeds was to be used on the Madden Street property.

Secondly, Plaintiff could have protected herself by requesting an escrow of funds to be used on a specific property. Testimony was also presented at trial that Firstart had never maintained separate escrow accounts on any of these properties. Both Yates and Philips testified that the funds borrowed on all occasions went into a general operating account, with no earmarking of funds for particular projects. Had the Plaintiff been concerned about the use of the funds borrowed, she could have insisted on such an escrow agreement. If the Plaintiff relied on any representation that the loan proceeds would be invested in particular property, that reliance was not reasonable in light of the Plaintiff's failure to take any steps to ensure the funds were so invested.

In light of this Court's finding that the ownership of the property at 3448 Firestone was not misrepresented to the Plaintiff, any reliance the Plaintiff may have had on any representation that the funds borrowed were to go into that property was also unreasonable. Testimony at trial was clear that the loan was made in a great hurry, and Seymour, through her agent Brinson, knew of Firstart's immediate need of cash. Under those circumstances, if Seymour did believe that the funds borrowed were to go into the Firestone property, her reliance was unreasonable.

## TERMINATION OF CONTRACT TO PURCHASE 3448 FIRESTONE

This Court has found that, at the time of the loan from Seymour, Firstart had the Firestone property under contract, and intended to close on that purchase. The Court further finds that there was no intent to mislead the Plaintiff or misrepresent the intention to purchase 3448 Firestone. After determining not to close, Firstart contacted Seymour and offered her other collateral, in fact, any collateral the partnership had, in order to secure that loan. Seymour was willing to accept substitute collateral, but was not satisfied with

her mortgage position on any such collateral available.

Even if the decision to terminate the contract to purchase 3448 Firestone was made at or before the time of the loan to Firstart, the Court is of the opinion that the Plaintiff cannot prevail on this dischargability action. The Plaintiff alleges that Firstart induced her to loan money to the partnership to be secured by a mortgage on the Firestone property, with the knowledge that the purchase of that property would not be closed, and the Plaintiff relied on the representation that the property would be purchased. The Court finds that assuming the misrepresentation was made, and was material, and was relied upon by the Plaintiff, any such reliance was unreasonable. The Court has found that the Plaintiff is an experienced business woman. She has other real estate investments. In addition, her agent, who was handling the loan in question, is a licensed real estate broker. The Plaintiff failed to take the most rudimentary steps to protect herself. She did not require that a mortgage be exchanged contemporaneously for the loan in question. She knew the property was only under contract to Firstart. She knew or should have known that any number of factors could have caused the purchase of that property to fall through. She had actual or constructive knowledge of the shaky financial position of Firstart. Among other possibilities, an involuntary bankruptcy proceeding could have been brought. The Plaintiff did not ask for a formal closing, or even a contemporaneous exchange of loan proceeds for a mortgage. The testimony was clear: the general practice was for the Plaintiff to receive her mortgage some weeks or even months after loaning funds to Firstart. Nor did she ever retain her own counsel to protect her interests.

Even an exceptionally strong showing that the debtor has made false representations will not excuse Seymour's failure to demonstrate reasonable reliance thereon. *In re Mullet*, 817 F.2d 677 (10th Cir.1987). As stated in *King v. Oxford*, 282 S.C. 307, 318 S.E.2d 125 (App.1984), "[i]t is the policy of the courts not only to discourage fraud, but also to discourage negligence and inattention to one's own interest. Courts do not sit for the purpose of relieving parties who refuse to exercise reasonable diligence or discretion to protect their own interests." *Id.* (citations omitted). *See also Florentine Corporation v. PEDA I, Inc.*, 287 S.C. 382, 339 S.E.2d 112 (1985) (finding that there is no right to rely where there is an arm's length transaction between mature, educated people, "especially in circumstances where one should have utilized precaution and protection to safeguard his interest."). The Plaintiff herein could have easily protected her interest, and ensured that her loan was secured by a mortgage. Having failed to take this very basic precaution, she has failed to meet her burden of showing reasonable reliance on the alleged misrepresentations of the Plaintiff.

## CONCLUSION

The principal goal of bankruptcy is to relieve an honest debtor of an overwhelming burden of debt. The importance of this "fresh start" policy is apparent throughout the Bankruptcy Code and the cases interpreting it. The Plaintiff in this case has failed to prove by the preponderance of the evidence (*Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988)) that material facts were misrepresented, that she reasonably relied thereon, or that she was damaged thereby. Accordingly, this Court finds the debt of Yates to Seymour dischargeable in this bankruptcy case.