In re David WHITENACK, Debtor.

Tompkins and McMaster, Plaintiff,

v.

David Whitenack, Defendant.

Bankruptcy No. 97–06246–W.
Adversary No. 97–80312–W.

United States Bankruptcy Court,
D. South Carolina.

May 29, 1998.

George H. McMaster, Columbia, SC, for plaintiff.

James P. Craig, Columbia, SC, for defendant.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Complaint of the Plaintiff, Tompkins & McMaster ("Plaintiff") against the Debtor, David J. Whitenack ("Debtor"), wherein the Plaintiff seeks to have the Court deny the discharge of a debt of the Debtor to the Plaintiff in the principal amount of Eight Thousand, One Hundred and No/100 ($8,100.00) Dollars pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(2)(B).[1]

After receiving the testimony, considering all the evidence and weighing the cred-

ibility of the witnesses, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.[2]

## FINDINGS OF FACT

The Debtor executed a Promissory Note in favor of Russell & Jeffcoat Realtors, Inc. ("Russell & Jeffcoat" or "the real estate company") dated May 5, 1992 in the original principal amount of Ten Thousand, Six Hundred and No/100 ($10,600.00) Dollars; and as collateral for such note, the Debtor executed a certain Mortgage on his residence located at 211 Willow Winds Road, Columbia, South Carolina. Thereafter the Mortgage was recorded in the county real property records but the Debtor was never provided a copy of the recorded Mortgage.

At the time the Debtor executed the above referenced Note and Mortgage, he was employed by Russell & Jeffcoat as a real estate agent paid on a commission basis. The Note and Mortgage, which had a due date of one (1) year from the date of the Note, were given to memorialize an indebtedness of the Debtor to Russell & Jeffcoat for commissions advanced by the real estate company to the Debtor.

Almost concurrently with the execution of the aforesaid Note and Mortgage, Russell & Jeffcoat dismissed the Debtor from its employment. At the time of such dismissal, the Debtor and Russell & Jeffcoat were entitled to certain earned commission payments on lot sales to be paid by a subdivision developer, but which by agreement with the developer, were deferred and which would be later collected by Russell & Jeffcoat. The Debtor's share of these commissions in total equaled a sum which would satisfy or nearly satisfy the

---

1. Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, shall be by section number only.

2. The court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

indebtedness evidenced by the aforesaid Note and Mortgage although there apparently was no express agreement to apply the Debtor's share of the commissions directly to the payment of the Note and Mortgage. Russell and Jeffcoat never extended the due date of the Note and Mortgage, and never made a demand upon the Debtor for payment of the Note and Mortgage even after the Note became overdue. Thereafter, without consent from or notice to the Debtor, Russell & Jeffcoat waived all commissions due on the aforesaid lot sales and in so doing, no funds were generated to the Debtor which could have been used to satisfy the Note and Mortgage.

On September 1, 1993, the Debtor, as seller, entered into a contract for sale of the Willow Winds Road property to Dell–Ann and John Jacobs. At that time and presently, Dell–Ann Jacobs (now McGlocklin) was employed as an assistant to a real estate sales agent and was familiar with real estate contracting, sales and closings. The Jacobs, as purchasers, retained the Plaintiff law firm to represent them in connection with their purchase of the property, with services to include a title examination, preparation of closing documents and the conducting of the closing itself. To assist them in the purchase of the property, the Jacobs also contracted with The Hinks Company, a loan broker, for the purpose of obtaining a purchase money loan. The Debtor was employed by The Hinks Company and served as the loan officer for the Jacobs in connection with this same closing.

On December 28, 1993, the Debtor sold his residence located at 211 Willow Winds to the Jacobs. The Plaintiff law firm represented the Jacobs at the closing of the sale. At the closing, no funds were collected or escrowed by the Plaintiff for payment and/or satisfaction of the aforesaid Note and Mortgage which, at that time, remained a lien against the property.[3] It appears that the existence of the Russell and Jeffcoat mortgage, as a second mortgage on the property, was either not identified by the title examination performed by the Plaintiff or was not taken into consideration in the preparation of closing documents. The closing statement prepared by the Plaintiff did not reflect the second mortgage nor was any affidavit which would attest to the liens on the property obtained from the Debtor despite the issuance of title insurance (underwritten by the Plaintiff's title insurance agency) to protect the lender. At the closing, the Plaintiff did collect certain closing costs and make certain adjustments and disbursements, including amounts necessary to pay off tax liens and a first mortgage recorded on the property.[4]

Within days following the closing of the sale of the Debtor's residence to the Jacobs, the Plaintiff discovered that the aforesaid mortgage to Russell & Jeffcoat remained a lien against the property and requested Russell & Jeffcoat to satisfy same, which demand was rejected. Russell & Jeffcoat maintained that such indebtedness was still due and owing in the amount of approximately Eight Thousand, One Hundred and No/100 ($8,100.00) Dollars.

The Plaintiff, as the closing attorneys for the Jacobs, had certified title to the Willow Winds property to the Jacobs' lender and therefore, made demand upon the Debtor to pay the amount alleged due to Russell & Jeffcoat but the Debtor failed to do so maintaining: (1) that the debt to Russell & Jeffcoat was not due and owing since he had commissions that should have been paid to him that would offset such indebtedness; and (2) that he had no funds

---

**3.** There was no evidence presented that the mortgage was not duly recorded or discoverable as a second mortgage lien on the property through a standard title examination.

**4.** There was evidence introduced that the Plaintiff did not collect at closing the amount actually necessary to pay off the tax liens, but made a further adjustment within a day of the closing by retrieving and reissuing the seller's net proceeds check.

with which to pay the indebtedness as all of the net proceeds from the sale of Willow Winds property had been paid to other creditors, namely, for medical expenses relating to his wife's last illness and death.

After several months, the Plaintiff paid Russell & Jeffcoat the sum of Eight Thousand, One Hundred and No/100 ($8,100.00) Dollars to satisfy the Note and Mortgage and to clear the lien upon the Jacobs' property to fulfill their obligations as closing attorneys for the Jacobs and the Jacobs' lender; and in so doing, the Plaintiff purchased by assignment, the Note and Mortgage from Russell & Jeffcoat and further received an assignment from the Jacobs of any claim which they may have against the Debtor.

Thereafter, an action was filed against the Debtor in state court which resulted in the Debtor executing a Confession of Judgment in favor of the Plaintiff in the amount of Eight Thousand, One Hundred and No/100 ($8,100.00) Dollars, which Confession of Judgment remains unpaid. The Debtor alleges that he did not owe the debt, but did not have the financial resources to contest the action and therefore, executed the Confession of Judgment in favor of the Plaintiff.

On July 28, 1997, the Debtor filed a voluntary Chapter 7 petition. The Plaintiff seeks to avoid the discharge of its debt alleging that the Debtor made false representations, both oral and written, relating to the second mortgage debt to Russell & Jeffcoat as a lien against the Willow Winds property; such misrepresentations being that the second mortgage had been satisfied and that the property would be free and clear of all encumbrances.

The Debtor alleges that he made no oral representations whatsoever regarding the satisfaction or existence of the second mortgage as such issue was never discussed either prior to or contemporaneously with the closing and that at all times he acted under the belief that the mortgage was not a recorded lien or encumbrance against the Willow Winds property, or had

been satisfied from commissions due him and collected by Russell and Jeffcoat. Furthermore, the Debtor asserts that this belief was reinforced because the Plaintiff, as the closing attorneys, had examined the title of the property and had not mentioned, required or collected any funds for the payment and/or satisfaction of such a mortgage lien.

The issue before this Court is whether the Debtor made either an oral or written misrepresentation that there was no second mortgage lien on the property and that the property was being transferred "free and clear of encumbrances" as to deny his discharge pursuant to § 523(a)(2)(A) or § 523(a)(2)(B).

## CONCLUSIONS OF LAW

Section 523(a)(2) provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual Debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the Debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the Debtor's or an insider's financial condition;

(iii) on which the creditor to whom the Debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the Debtor caused to be made or published with intent to deceive;

11 U.S.C. § 523(a)(2).

It is well established that § 523(a)(2)(A) and § 523(a)(2)(B) are mutually exclusive. *In re Ransford,* 202 B.R. 1, 3 (Bkrtcy.D.Mass.1996). The former "ap-

plies expressly when the debt follows a transfer of value or extension of credit induced by falsity or fraud (not going to financial condition), the other when the debt follows a transfer or extension induced by a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied." *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 441, 133 L.Ed.2d 351 (1995). This dichotomy creates a curious anomaly: if stated orally, a false statement respecting the debtor's financial condition, no matter how egregious, will not render the debt nondischargeable. *In re Ransford*, 202 B.R. at 3; *Engler v. Van Steinburg*, 744 F.2d 1060, 1060–61 (4th Cir.1984); *In re Mercado*, 144 B.R. 879, 882 (Bkrtcy. C.D.Cal.1992).

*In re Tallant*, 207 B.R. 923, 933 (Bkrtcy. E.D.Cal.1997)

The party challenging the dischargeability of a debt bears the burden of proof, *In re Robb*, 23 F.3d 895 (4th Cir. 1994), and that burden must be met by the preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) and *Combs v. Richardson*, 838 F.2d 112, 18 C.B.C.2d 487 (4th Cir.1988).

### 11 U.S.C. § 523(a)(2)(A)

This Court has recently reiterated the general test for dischargeability proceedings pursuant to § 523(a)(2)(A).

Courts generally agree that the following traditional elements of fraud must be proven to sustain a claim under § 523(a)(2)(A): (1) That the Debtor made a representation; (2) That at the time the representation was made, the Debtor knew the representation was false; (3) That the Debtor made the false representation with the intention of deceiving the creditor; (4) That the creditor relied on such representation; and (5) That the creditor sustained the alleged loss and damage as the proximate result of the false representation.

E.g., *In re Valdes*, 188 B.R. 533, 535 (Bankr.D.Md.1995); *In re Carrier*, 181 B.R. 742, 746 (Bankr.S.D.N.Y.1995). As to the reliance requirement, § 523(a)(2)(A) requires justifiable, but not reasonable reliance. *Field v. Mans*, 516 U.S. 59, 73–76, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); *In re Burdge*, 198 B.R. 773 (9th Cir. BAP 1996). The objecting creditor has the burden of proving each of the foregoing elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Stanley*, 66 F.3d 664, 667 n. 4 (4th Cir. 1995).

*In re Hyman*, 219 B.R. 699 (Bkrtcy.D.S.C. 1998) citing *In re Simos*, 209 B.R. 188 (Bkrtcy.M.D.N.C.1997). Also see *In re Richardson*, 179 B.R. 791 (Bkrtcy.D.S.C. 1994) and *In re Baird*, 229 B.R. 361 (Bkrtcy.D.S.C.1997).

In *In re Van Steinburg*, 744 F.2d 1060, 1061 (4th Cir.1984), the Fourth Circuit Court of Appeals held that a debtor's assertion that he owned property free and clear of liens is a statement respecting his financial condition and therefore such assertion must be in writing to bar the debtor's discharge.

The conclusion of the Fourth Circuit and supported by a clear reading of § 523(a)(2) is that false representations or false pretenses which are transmitted orally respecting the debtor's financial condition are not actionable under § 523(a)(2). This is due to the fact that statements respecting a debtor's financial condition are specifically excluded from § 523(a)(2)(A) and oral statements are specifically excluded from § 523(a)(2)(B).

*In re Cook*, 46 B.R. 545, 549 (Bkrtcy. E.D.Va.1985).

Therefore, initially, it appears that within this Circuit the Plaintiff cannot maintain its claim pursuant to § 523(a)(2)(A) under the facts of this case. It must rely on § 523(a)(2)(B). Nevertheless, it is helpful

to consider the facts as they would relate to the applicability of § 523(a)(2)(A).

 To succeed under § 523(a)(2)(A), the Plaintiff must first demonstrate that there was an actual oral misrepresentation, misrepresentation to be implied from the facts, or a misrepresentation by silence. In this case, there was contradictory testimony. The purchaser, Ms. Jacobs, testified that to the "best of her memory", the Debtor verbally indicated at closing that "all liens were satisfied" when asked by the closing attorney (who by all parties account only appeared briefly during the closing). The Debtor, on the other hand, testified that the Russell & Jeffcoat mortgage was not discussed in any way, that he was never asked about it, and that the failure of the closing attorney to mention or inquire about the mortgage served to verify his belief that no mortgage was ever recorded or that it had been satisfied, thus obviating any need on his part to disclose or discuss it at closing. Based upon the totality of the circumstances and judging the credibility of the witnesses, the Court is persuaded by the testimony of the Debtor. The purchaser clearly limited her testimony to her memory. Neither the actual closing attorney, real estate paralegal, nor the purchaser's real estate agent, who were all present at the closing, were presented to support the purchaser's version of events. The Debtor's testimony was more exact and credible. Therefore, the Plaintiff did not meet its burden of proving that an actual false oral representation was made by the Debtor.

Additionally, this Court declines to find a misrepresentation to be implied from the surrounding facts or due to the Debtor's silence in not mentioning the second mortgage upon his own initiative and for the same reasons finds that the Debtor lacked an intent to deceive at the time of the closing.

A review of the facts indicates that the Debtor could have reasonably believed that the Russell & Jeffcoat mortgage was either not recorded or had been satisfied.

The note and mortgage had a due date on or about May 5, 1993, more than seven (7) months prior to the closing. However, at no time before or after the due date did the Debtor ever receive any demand for payment or notice of outstanding debt of any kind from the mortgage holder. The Debtor had never received a copy of the mortgage which indicated that it was recorded nor was he told it was to be recorded. The Debtor never received any payment of the earned and expected commissions due him from the sale of certain lots from Russell & Jeffcoat, the mortgage holder, nor was he ever informed that the real estate company had later waived the commissions, which it did without the consent of or notice to the Debtor. Finally, the closing attorney never reported the mortgage as an encumbrance of title either before or at the closing despite the fact that a title examination was conducted and title insurance issued, and that there was frequent contact between the Debtor, the attorney's real estate paralegal, and the purchaser before the closing about other liens against the property, specifically tax liens.

Based upon the totality of circumstances and weighing the evidence, the Court finds that the Debtor did not misrepresent the status of the second mortgage as a lien on the property by his silence or to be implied from the facts either at or before the closing of the sale, and lacked the requisite knowledge of falsity or intent to deceive concerning the alleged representation to meet the requirements of § 523(a)(2)(A). With this ruling, the Court does not need to address the reliance or proximate cause elements of § 523(a)(2)(A).

For all of these reasons, including the Fourth Circuit's ruling in the *Van Steinburg* opinion, supra, the Plaintiff has failed to meet its burden of proof under this claim.

### 11 U.S.C. § 523(a)(2)(B)

According to the holding of the Fourth Circuit Court of Appeals in *In re Van*

*Steinburg,* 744 F.2d 1060, § 523(a)(2)(B) may be applied to a broad range of written statements and therefore this Court shall consider the Plaintiff's argument that the Contract of Sale, General Warranty Deed and Closing Statement should be considered sufficient written statements regarding the Debtor's financial condition to constitute a misrepresentation that the property was free and clear of any lien of the second mortgage and meet § 523(a)(2)(B)'s requirements.

The Contract of Sale on the property, dated September 1, 1993, provided, *inter alia,* that "Seller agrees to convey by marketable title and deliver a proper statutory warranty a deed free of encumbrances, except as herein stated, with all stamps affixed thereto." The Contract of Sale did not mention either the first mortgage, second mortgage or tax liens.

The Closing Statement signed by the Jacobs and the Debtor contains a list of closing costs and amounts paid by the closing attorney and contains the statement "I have carefully reviewed the HUD–1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account in this transaction." The Deed executed by the Debtor on December 28, 1993 is a statutory warranty deed and states "[a]nd the Grantor does hereby bind himself and his heirs to warrant and forever defend all and singular the premises unto the Grantees, their Heirs, Successors, and assigns against himself and his heirs against every person whomsoever lawfully claiming or to claim the same, or any part thereof."

Without addressing whether the exact representations made in these writings in this case meet the requirements of § 523(a)(2)(B), the Court finds that the ruling on this claim turns on other elements; the Debtor's intent to deceive and/or the creditor's reliance. "Section 523(a)(2)(B) expressly requires not only reasonable reliance but also reliance itself; and not only a representation but also one that is material; and not only one that is material but also one that is meant to deceive." *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 442, 133 L.Ed.2d 351 (1995).

■ For the same reasons stated above, the Court finds that the Debtor lacked a knowledge of the falsity of the alleged misrepresentation and further lacked an intent to deceive at the time of the execution of any of the writings cited by the Plaintiff. The greater weight of the evidence establishes that the Debtor intended to transfer title free and clear of liens at the time of the execution of these documents.

■ Furthermore, § 523(a)(2)(B) requires that the Plaintiff rely on the representation and that such reliance be reasonable. In this case, the Plaintiff is the closing law firm which either missed the second mortgage in its title search of the property or neglected to note it on the closing documents.[5] The law firm purports to stand in the shoes of the purchaser due to an assignment of the cause of action that led to the debt and to assume the state of knowledge of the purchaser and have this Court determine if that reliance was reasonable. However, this Court believes the law firm cannot divorce itself from its actual role in and presence at the closing of the sale.

■ A creditor to whom a Debtor's obligation is assigned, must demonstrate that not only did the assignor reasonably rely on the Debtor's false representation, but that it also relied on the false representations in deciding to receive the assignment. *See generally In re Bui,* 188 B.R. 274, 279 (Bkrtcy.N.D.Cal.1995).

---

5. Any argument that the law firm in fact expressly knew about the second mortgage lien prior to the closing but relied upon the Debtor's statement or execution of closing documents when it failed to obtain a satisfac-

tion of mortgage, or collect or escrow sufficient funds to satisfy the lien is implausible, not indicated by the evidence, and certainly not reasonable conduct or reliance.

Considering the totality of the circumstances, there was either no actual reliance on the written statements or the reliance by the purchaser and/or the law firm was not reasonable. First, the purchaser testified at trial that she retained and relied upon the law firm to check the public record regarding encumbrances to the title of the property and to transact the closing in order to assure her that she would receive the property free and clear of liens. The Court holds that despite the conclusory testimonial assertions of reliance on these written statements by the purchaser, the purchaser actually relied upon the law firm and not the representations contained in the documents to ensure her title to be free and clear of liens, including the second mortgage. Furthermore, reasonable persons, especially those such as Ms. Jacobs with experience in the real estate business, do not rely upon a seller's representations of title, but instead follow the accepted practice of having legal representation and an examination of public title records as was undertaken in this case. Secondly, the law firm cannot be seen to have reasonably relied upon the Debtor's representation of title in the Deed and Settlement Statement prepared by it in conducting the closing. Clearly the law firm actually relied upon its own skill and expertise in title examination and real estate closings. The law firm admitted at trial that "it made some mistakes" in the closing of this sale. The loss or indebtedness in this case was caused not by any representation of the Debtor but due to the law firm's errors in the title examination and closing. The Court finds that there was a lack of actual reliance by these parties on the documents at issue and further that any such reliance asserted by the purchaser and/or the law firm is not reasonable within the requirements of § 523(a)(2)(B).

The Court's conclusions are supported by case law with similar facts. In *In re Kirsh,* 973 F.2d 1454 (9th Cir.1992), the debtor had misrepresented that there was not a second mortgage on property when borrowing funds from their attorney with whom they had a close relationship. In a § 523(a)(2)(A) case based upon a justifiable reliance standard, the Court allowed the discharge because the creditor was an experienced attorney who "was well aware of the fact that standard practice in California was for lenders to obtain title reports. Lenders do not merely rely upon the representations of borrowers.... Obtaining a title report is a simple and not overly expensive proposition. A person with [the creditor's] knowledge, experience and competence should have ordered one." *Kirsh* at 1461.

In *In re Landon,* 37 B.R. 568 (Bkrtcy. N.D.Ohio, 1984), the debtors failed to disclose and misrepresented in a land sales contract the existence of a second mortgage on real estate, despite executing it just two (2) months before the closing. The creditors were licensed real estate salespersons who did not obtain a title search or title insurance. In a § 523(a)(2)(A) case using a reasonable reliance standard, the Court allowed the discharge finding the reliance unreasonable.

> [The creditors] failure to adhere to the basic standards of their profession is conduct which indicates that they did not reasonably rely on the contract.... Without having purchased title insurance or accomplished a title search, this Court holds that there has not been reasonable reliance on the representations of the Debtor. *Landon* at 571.

In a case within this Circuit brought under § 523(a)(2)(A), *In re Criswell,* 52 B.R. 184 (Bkrtcy.E.D.Va.1985), the Court in utilizing a reasonable reliance standard found that purchasers of a house did not reasonably rely on a general warranty deed or purchase contract which represented that the property would be sold free of encumbrances. As grounds to find reliance unreasonable, the Court cited the negligence of the closing attorney who had discovered the second mortgage but had failed to advise the purchasers.

Finally, in this District, in *In re Yates,* 118 B.R. 427 (Bkrtcy.D.S.C.1990), the

Court found that a lender did not reasonably rely on representations that she would be given a mortgage on property to be acquired when making a loan to the debtor. The Court noted that the lender was a knowledgeable real estate investor and represented by a licensed commercial real estate broker. "The Plaintiff failed to take the most rudimentary steps to protect herself ... The Plaintiff did not ask for a formal closing, or even a contemporaneous exchange of loan proceeds for a mortgage". *Yates* 118 B.R. at 432. For all of these reasons, the Plaintiff has failed to meet its burden of proof under § 523(a)(2)(B).

### CONCLUSION

For the reasons stated within, it is therefore,

**ORDERED,** that judgment shall be entered in favor of the Debtor/Defendant on the § 523(a)(2)(A) cause of action. It is further,

**ORDERED,** that judgment shall be also be entered in favor of the Debtor/Defendant on the § 523(a)(2)(B) cause of action.

**AND IT IS SO ORDERED.**