**In re William HURLEY, WDH Howell, LLC, FEL Corp., Debtors.**

**Criimi Mae Services Limited Partnership, as Special Servicer on behalf of LaSalle National Bank Assoc., Plaintiff,**

v.

**William D. Hurley, Defendant.**

Bankruptcy Nos. 01–50618, 01–56422, 01–56423.
Adversary No. 02–5274.

United States Bankruptcy Court, D. New Jersey.

Nov. 22, 2002.

Richard M. Meth, Esq., Herrick, Feinstein, LLP, Newark, NJ, Gregory A. Cross, Esq., Venable, Baetjer and Howard, LLP, Baltimore, MD, for Plaintiff.

Sheldon Schachter, Esq., Verona, NJ, for William D. Hurley.

### OPINION

WILLIAM H. GINDIN, Bankruptcy Judge.

### PROCEDURAL HISTORY

Presently before the court is the Debtor's Motion for Summary Judgment. The debtor, William D. Hurley [Hurley] is the principal shareholder of WDH Howell, LLC and FEL Corp.[1] On January 18, 2001, WDH Howell filed a Chapter 11 petition. Dr. Hurley and FEL filed Chapter 11 petitions on May 24, 2001. The cases were administratively consolidated.

The plaintiff, Criimi Mae initiated the within adversary proceeding on June 10, 2002. In its complaint, the plaintiff seeks a finding of non dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A). Hurley filed this Motion for Summary Judgment on July 22, 2002. The court heard oral argument on the debtor's motion on August 29, 2002. The court reserved opinion, and the parties filed timely post hearing submissions. The trustee was not present and took no position.

### JURISDICTION

This court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This adversary proceeding is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I). Venue lies properly in this district as proscribed in 28 U.S.C. § 1408. To the extent that this court is found to have no jurisdiction as to any matter, this opinion shall constitute a Report and Recommendation pursuant to 28 U.S.C. § 157(c)(1).

### FACTS

On October 8, 1997, Holliday Fenoglio, L.P. made a loan to Hurley in the amount of $9,000,000. In connection with the loan, Hurley executed a Mortgage and Security Agreement on real property in Howell Township, Monmouth County, New Jer-

---

1. On or about February 1, 2001, the court approved a sale of substantially all of the assets of FEL Corp.

sey. Hurley executed the closing documents as the principal owner of WDH Howell and personally guaranteed the loan. The loan documents included an Environmental Indemnity Agreement [EIA].

The loan was purchased by Lehman Brothers Holding, Inc. on November 1, 1997. Prior to the purchase of the loan, Lehman created a Trust Fund titled the Series 1997–C2 Loan Pool. Lehman then sold the loan to First Union Commercial Mortgages as the Trustee for the Trust. On November 1, 1997, the Plaintiff, Criimi Mae was designated as the Special Servicer for the Trust.

The Plaintiff, Criimi Mae, the Indenture Trustee for the loan servicer, initiated this adversary proceeding in June 2002. In its complaint, Criimi Mae seeks a denial of the debtor's discharge pursuant to 11 U.S.C. § 523(a)(2)(A). Criimi Mae's claim is based on alleged misrepresentations made by Hurley in the EIA in procuring the loan secured by the property. The plaintiff alleges that Hurley knew the property was environmentally contaminated and misrepresented the extent of the contamination in obtaining the loan.

Hurley moves for summary judgment on three primary grounds. First, Hurley avers he did not misrepresent the contamination on the property. Second, Hurley asserts that because Criimi Mae was not the original lender, Criimi Mae could not have relied upon the EIA in connection with the loan. Lastly, Hurley alleges that Criimi Mae's cause of action is barred by the Entire Controversy Doctrine.

### DISCUSSION

#### Standard of Review: Motion for Summary Judgment

A party is entitled to summary judgment only when the court concludes "that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A court in considering a summary judgment motion must "view all the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pacitti v. Macy's*, 193 F.3d 766, 772 (3d Cir.1999); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995).

#### Burdens of Proof

The moving party bears the burden of proving that no material issue of fact is in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has carried its initial burden, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587, 106 S.Ct. 1348, *quoting* Fed.R.Civ.P. 56(e). Facts are material if they could alter the outcome, and "disputes are genuine if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assur. Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995).

If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of some evidence in support of the party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that factual issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### 11. U.S.C. § 523(a)(2)

■ Section 523(a)(2)(A) excepts from discharge debts procured by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). To have a debt declared nondischargeable under 523(a)(2)(A), a creditor must show that

(1) the debtor obtained money, property or services through a material misrepresentation;

(2) the debtor, at the time, knew the representation was false or made with gross recklessness as to its truth;

(3) the debtor intended to deceive the creditor;

(4) the creditor reasonably relied upon the debtor's misrepresentations; and

(5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations.

*In re Poskanzer,* 143 B.R. 991, 999 (Bankr. D.N.J.1992); *In re Knapp,* 137 B.R. 582, 586 (Bankr.D.N.J.1992). All of these elements must be shown.

In the instant matter, the court is faced with two issues; 1.) whether or not the debtor made a material misrepresentation and 2.) whether or not the plaintiff justifiably relied on the alleged material misrepresentation.

### Material Misrepresentation

■ In response to the first contention, Hurley asserts that he did not make a material misrepresentation. In connection with the loan, Hurley executed an Environmental Indemnity Agreement, containing the following language:

[T]here are no Hazardous Substances or underground storage tanks in, on or under the Property, except those that are

both (i) in compliance with all environmental laws ... and (ii) fully disclosed to the Lender in writing pursuant to the written reports attached as Exhibit B.

Attached as Exhibit B to the EIA was the Phoenix Report.[2] The Phoenix report specifies some contamination on the property. Hurley reasons that since the lender had both the EIA and the Phoenix Report, they were made aware of the status of any contamination on the property before approving the loan.

The plaintiff, however, alleges the property was contaminated to a greater extent than the disclosure in the Phoenix Report sets forth. Moreover, the plaintiff asserts that Hurley knew of further contamination due to studies conducted by Aqua Terra in 1996. In support of its contentions, the plaintiff attached the Aqua Terra report to its moving papers. The evidence presented to the court, if proven true, would dispute Hurley's contention that he did not misrepresent the extent of any contamination on the property. As such, the court is required to make a factual finding determining whether or not Hurley made a material misrepresentation. That issue cannot be decided on summary judgment.

### Justifiable Reliance

■ Additionally, the court cannot make a finding as to whether or not the plaintiff "justifiably relied" on the alleged misrepresentations. In *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the Supreme Court held that a creditor's reliance on the false representation must be "justifiable" under the circumstances. The debtor argues that since the alleged false statement was not made

---

**2.** It is disputed whether or not the Phoenix report was actually attached to the EIA as stated in the EIA. Assuming arguendo that the plaintiff had the referenced report, the plaintiff successfully presented evidence, which, if

true, would establish that Hurley knew of further contamination on the property and failed to disclose this in violation of his representations in the EIA.

to the plaintiff, the plaintiff could not have justifiably relied on the statement. Other bankruptcy courts have held that where the creditor is a successor in interest to an original creditor, the creditor may establish a finding of "justifiable reliance" by showing that each successor to the original creditor relied on the misrepresentation. *In re Whitenack,* 235 B.R. 819 (Bankr. D.S.C.1998); *In re Bui,* 188 B.R. 274 (Bankr.N.D.Cal.1995). Although this issue has not been addressed by the courts within the Third Circuit, this court finds the reasoning of the *Bui* and *Whitenack* courts persuasive, and will follow it here.

To establish the "justifiable reliance" prong of § 523, Criimi Mae needs to show that each successor in interest to the original lender, Holliday Fenoglio, justifiably relied on the alleged misrepresentations in the EIA. The plaintiff argues that further discovery is necessary to determine if and when each successor in interest knew of and or relied upon the alleged misrepresentations. Since, the complaint was recently filed, and discovery has not yet concluded in this case, the court finds it appropriate to permit discovery to continue and thus it is premature to determine if Criimi Mae justifiably relied on Hurley's alleged misrepresentations.[3]

### Entire Controversy Doctrine

■■■■ In his moving papers, the debtor asserted that Criimi Mae is collaterally estopped from bringing this action by the Entire Controversy Doctrine. That doctrine is a "claim preclusion rule requiring that a litigant assert all related claims against all parties in one action or be barred from bringing a claim in a second action." *In re Hudsar, Inc.,* 199 B.R. 266, 277 (Bankr.D.N.J.1996). "The doctrine applies to all claims, causes and defenses relating to a controversy." *In the Matter of Jesse E. Hawkins,* 231 B.R. 222 (D.N.J. 1999). In determining whether or not an issue is collaterally estopped by virtue of a state court action or judgment, the bankruptcy court must review the entire state record to determine its preclusive effect. *In re Nugent,* 254 B.R. 14 (Bankr.D.N.J. 1998).

■■■■ Hurley states that Criimi Mae is precluded in this action by the entire controversy doctrine, because Criimi Mae sought default damages against Hurley in state court, and in arguing default under the loan, Criimi Mae never argued fraud in relation to the contamination provisions of the EIA. The debtor's argument is unavailing, however, because the state court action was a foreclosure action based on default, whereas the present action is a non dischargeability action based on alleged fraud. In order to establish the right to foreclose, Criimi Mae did not have to raise the fraud claim. It merely had to show failure to pay the debt in accordance with its terms.

Moreover, issues over which the bankruptcy court exercises exclusive jurisdiction are not precluded by a previous state court action. *In re Lewison Bros.,* 162 B.R. 974, 982 (Bankr.D.N.J.1993), citing, *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Issues wherein the bankruptcy court has exclusive jurisdiction include actions pursuant to § 523 and § 727, which seek a determination of the dischargeability of debts. 28 U.S.C. § 157(b)(2)(J). Such actions cannot be litigated in pre-bankruptcy state court actions, because the actions do not arise until a debtor seeks a discharge, which

---

3. The complaint was filed on June 10, 2002. A joint scheduling order was filed on Nov. 18, 2002, and trial is scheduled for July 3, 2003.

does not occur until the filing of a bankruptcy petition.

In the instant case the individual debtor seeks a discharge while Criimi Mae alleges fraudulent conduct not in connection with the execution or enforcement of the loan, but rather in the ability to discharge the loan. Although the fraud and default actions may arise from the same documents and/or transactions, the § 523 action is not precluded because it is an action under the exclusive jurisdiction of this court. There is no claim preclusion or issue preclusion. The claims raised in each action are separate, and the bankruptcy court is the proper forum for the plaintiff's complaint.

## CONCLUSION

Based on the foregoing, the Debtor's Motion for Summary Judgment is **DENIED**. Counsel for the plaintiff is directed to submit an order consistent with this opinion within fifteen days of the date of this opinion.