Howard E. ROGERS, Doing Business as Howard E. Rogers Co., Appellant,

v.

George GARDNER, Trustee in Bankruptcy of the Estate of Howard E. Rogers, Etc., Appellee.

No. 14707.

United States Court of Appeals Ninth Circuit.

Oct. 28, 1955.

Quittner & Stutman, George M. Treister, Los Angeles, Cal., for appellant.

Ernest R. Utley, Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

Appellant appeals from an Order of the lower court affirming an Order of the Referee in Bankruptcy denying appellant discharge in bankruptcy. Before the filing against appellant of an involuntary petition in bankruptcy the appellant was engaged in the produce business. For the benefit of firms in the produce business Produce Reporter Co. publishes credit information; this data is furnished annually in the form of a bound volume called the "Blue Book"; it is kept up to date by the issuance of weekly credit sheets to subscribers. All credit information received on firms is published in the Blue Book and its supplements in code symbols, each volume or supplement containing the key to this code. The Blue Book published in April, 1952, showed appellant to have a net worth of $25,000. On or about September 15, 1952, appellant sent a financial statement to Produce Reporter Co. showing a net worth of approximately $57,-000 as of July 31, 1952. This net worth was a falsehood; in fact, the appellant was insolvent at the time.

Contrary to the customary practice Produce Reporter did not publish the report or revise its rating in its code system in the supplement immediately following receipt of the false financial statement. No revision of the April, 1952 rating was published until the weekly sheet of October 24, 1952; the credit rating in code symbols was "(69) (144) XXX (148)." When decodified into language terms this rating means, " * * its reported previous report should be revised to read that it reported no definite estimate as to the bankrupt's financial worth, that his reported methods, business reputation and credit standing were good, that the Produce Reporter Company had conflicting reports with respect to him, and that the rating given to him indicated the reported general

experience with him." (Findings of Fact II(d).) In November, 1952 Williams Farms Company, Inc. delivered merchandise to appellant on credit upon reliance of this credit rating. It appears that at the time Williams Farms extended the credit it did not know that appellant had issued a financial statement; this was discovered by Williams Farms only after appellant's bankruptcy.

■ The controlling statute in this case is Bankruptcy Act, § 14, sub. c(3), 11 U.S.C.A. § 32, sub. c: "The court shall grant the discharge unless satisfied that the bankrupt has * * * (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition * * *." It will be seen that to preclude a discharge by this section the objector to discharge must show these elements: (1) a written statement, (2) materially false as to financial condition, (3) falsity of which the bankrupt knows, (4) by use of which statement property must be obtained or credit extended, (5) and the creditor must have relied upon the statement. 1 Collier on Bankruptcy (14th Ed.) §§ 14.36 through 14.43, and cases cited therein, Godfrey, "Discharge under Section 14 Sub. c(2) and (3) of the Chandler Act," 27 Marq. L.Rev. 1 (1942).

Appellant centers his argument on the fifth element, alleging in his sole specification of error that "no creditor relied upon Appellant's financial statement in extending credit to him, and, in the absence of such reliance, there is no basis for denying the discharge under Section 14(c) (3) of the Bankruptcy Act [11 U.S.C.A. § 32(c) (3)]." For the purposes of this opinion it shall be assumed that all other requirements of the statute have been met.

Appellee bases his argument primarily upon the case of Yates v. Boteler, 9 Cir., 1947, 163 F.2d 953. In that case this court sustained a denial of discharge where the facts showed that the bankrupt had given false financial statements to Dun & Bradstreet which firm prepared a detailed financial statement incorporating the statements given by the bankrupt but adding information acquired elsewhere. Conceding to appellant that the facts of the Yates case, supra, are distinguishable from the facts in the case at bar, we do not believe that the Yates case marks out the maximal limits for denial of discharge under § 14(c) (3).

■ We are of the view that appellant has not sustained the burden of proof imposed upon the bankrupt by statute. § 14(c) contains a proviso clause which reads, "That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt." In commenting upon this section of the statute Collier makes this statement, "In order for the bankrupt to be entitled to his discharge after the burden of proof shifts to him, he must show by a preponderance of the evidence that the allegations of the specifications are untrue." 1 Collier on Bankruptcy (14th Ed.) § 14.13. The objector to the discharge carried the burden imposed upon him by presenting in evidence the preparation and publication ("* * * in any manner whatsoever * * *" reads the statute) of the admittedly false financial statement. At this point the burden of proof (not merely the burden of going forward) shifted to the bankrupt to prove that the creditor did not rely upon the financial statement. Morris Plan Industrial Bank of New York v. Parker, 1944, 79 U.S.App. D.C. 164, 143 F.2d 665. We cannot say that appellant has carried that burden of proof sufficiently to justify a reversal in this case. We have previously indicated our reluctance to disturb the find-

ings and conclusions of a referee, Yates v. Boteler, supra. "The ultimate facts required to make § 14, sub. c(3) operative must be inferred in most instances by the trier from objective facts found * * *. Unless 'clearly erroneous' the conclusion is not to be set aside by a court on appeal." Schapiro v. Tweedie Foot Wear Corporation, 3 Cir., 1942, 131 F.2d 876, 877.

It is appellant's contention that no causal connection exists between the financial report and the advancement of credit by Williams Farms Company. But this is assuming the answer to the central question at issue. True, the code symbols did not incorporate the financial statement directly, but has appellant carried his burden of proof of showing that the financial statement was in no manner relied upon? The code report shows that Produce Reporter Co. had conflicting reports as to appellant, but appellant has not shown that the financial statement he sent to Produce Reporter was not used or was not published in some manner, i. e., in such a manner that the correct condition of insolvency was not shown, or that a lesser credit rating was not reported. Appellant has in no way demonstrated that his financial statement was not used by Produce Reporter in preparing its revised code report upon which Williams Farms Co. relied. The Produce Reporter Co. has a code symbol to indicate insolvency; it seems highly doubtful that this symbol would not have been used in the credit sheet supplements had appellant submitted an accurate financial report.[1]

While other matters apparently entered into the making of the code report it must be remembered that it is not essential that the financial statement be the sole cause for advancement of credit. A partial reliance is sufficient, Yates v. Boteler, supra; Matter of Philpott, D.C. S.D.W.Va.1940, 37 F.Supp. 43.

Appellant also argues that there could be no reliance upon the financial statement as the creditor did not know such a statement existed until after the extension of credit and the commencement of bankruptcy proceedings. As was said above, appellant has not carried his burden of showing that the false statement did not enter into the code report upon which the credit apparently relied. As we said in Yates v. Boteler, supra, the statute is primarily concerned with the *result* which the false statement accomplishes, and when it is recalled that the statute provides for publication or causing to be published "in any manner whatsoever," [163 F.2d 956] it becomes apparent that this argument is rather specious. If it had merit a bankrupt could issue false statements of financial condition to credit agencies with impunity unless the credit agency expressly acknowledged the author of its information to be the bankrupt. Adoption of this theory would place a far too narrow constriction upon this statutory language.

A quotation from our Yates case, supra, 163 F.2d at page 958, seems appropriate: " * * * The appellant was under no compulsion, either legal or moral, to give out any statement whatsoever. But having elected to release certain figures pertaining to his business, it was his duty, both legal and moral to see to it that those figures were as accurate as he could make them. It is clear that he did not put out the necessary effort to make his information conform to this high standard." Nor can we ignore the policy behind the discharge features of the Bankruptcy Act. Discharge may be a matter of right, but only if the bankrupt does not fall within certain circumscribed patterns of conduct delineated in § 14(c). Appellant has not sufficiently demonstrated that he is beyond the confines of these statutory prohibitions.

The Order appealed from is affirmed.

[1.] The question whether discharge would be denied or not had no additional statement been made to Produce Reporter and the creditor relied upon the April rating is not before us and no opinion is expressed thereon.