### In re Luat D. BUI and Nhung K. Tran, Debtors.

### GENERAL ELECTRIC CAPITAL CORP., Plaintiff,

v.

### Luat D. BUI and Nhung K. Tran, Defendants.

### Bankruptcy No. 94–52866–ASW. Adv. No. 94–5383.

United States Bankruptcy Court, N.D. California.

Oct. 2, 1995.

---

Gary L. Fertig (argued), Law Offices of Gary L. Fertig, Alameda, CA, for Plaintiff General Electric Capital Corporation.

## MEMORANDUM DECISION

ARTHUR S. WEISSBRODT, Bankruptcy Judge.

### I.

### BACKGROUND

Before the Court is an Application for Default Judgment for Non–Dischargeability of a Debt by Plaintiff General Electric Capital Corporation ("GECC"). GECC alleges that it is the successor in interest to the claims of two department store chains: Levitz Furniture ("Levitz") and R.H. Macy & Co. ("Macy's"). Defendants are Luat D. Bui ("Bui") and Nhung K. Tran ("Tran"), the Debtors herein (collectively, "Debtors").

Debtors filed a joint voluntary petition under Chapter 7 of the Bankruptcy Code[1] on April 28, 1994. GECC timely filed its Complaint to Determine Dischargeability of a Debt on August 4, 1994, and served its summons and complaint by first class mail upon Debtors and their attorney, Henry Liem, Esq., on August 10, 1994. The Bankruptcy Court Clerk filed an Entry of Default on September 27, 1994.

---

[1]. Unless otherwise stated, all statutory references are to Title 11, United States Code ("the Bank-

GECC brings this Application pursuant to Rule 55 of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rule 7055 of the Federal Rules of Bankruptcy Procedure.

### II.

### APPLICABLE LAW

#### A. Default Judgments

An Entry of Default does not entitle a plaintiff to a Default Judgment as a matter of right. It is within the broad discretion of the trial court to grant a Default Judgment. *In re Kubick,* 171 B.R. 658 (9th Cir. BAP 1994), citing *Alan Neuman Productions, Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir.1988), *cert. denied,* 493 U.S. 858, 110 S.Ct. 168, 107 L.Ed.2d 124 (1989). Furthermore, Default Judgments may only be granted upon well pleaded facts alleged in a complaint, and only for relief for which a sufficient basis is asserted in a complaint. *Benny v. Pipes,* 799 F.2d 489 (9th Cir.1986), *cert. denied,* 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987).

A plaintiff must demonstrate a *prima facie* case by competent evidence in order to obtain a Default Judgment. In the instant case, GECC must demonstrate each of the elements of a *prima facie* case of the existence of the debt and its non-dischargeability by a preponderance of the evidence in order to have its debt declared non-dischargeable. *See, In re Lochrie,* 78 B.R. 257 (9th Cir. BAP 1987); *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

#### B. The Standard for Non–Dischargeability
#### (1) 11 U.S.C. § 523(a)(2)(B)

With respect to Levitz, GECC's complaint alleges claims for relief under both 11 U.S.C. § 523(a)(6) and 11 U.S.C. § 523(a)(2)(B). The Application for judgment by default, however, seeks judgment only on the basis of § 523(a)(2)(B), and the declaration filed in support of the Application purports to recite no facts establishing a claim for relief under

ruptcy Code") as it provided prior to the amendments that were enacted in October 1994.

§ 523(a)(6).[2] Therefore, for purposes of ruling upon this Application, this Court has considered only its sufficiency under § 523(a)(2)(B).

Under § 523(a)(2)(B), a debt is excepted from discharge if it is one for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; ....

### (2) 11 U.S.C. § 523(a)(2)(A)

With respect to Macy's, GECC's complaint seeks relief pursuant to the provisions of § 523(a)(2)(A), which excepts from discharge "a debt for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....". This claim for relief is commonly referred to as "actual fraud" and consists of:

(1) A representation by the debtor;

(2) Known by the debtor to be false;

(3) Made with the intent to deceive;

(4) Reasonably relied upon;

(5) Proximately causing damage.

*In re Britton*, 950 F.2d 602 (9th Cir.1991).

### III.

### FACTS

#### A. Levitz

In support of its Application for Default Judgment, GECC files a Declaration of William Maloney ("Maloney"), who describes himself as a "Legal and Account Representative" for GECC. That Declaration attaches a copy of a "Levitz Revolving Charge Applica-tion" dated January 30, 1994 (Exhibit A); a Levitz statement also dated January 30, 1994, showing items of furniture purchased from Levitz (Exhibit B); and Form 7 from the Debtors' Statement of Financial Affairs filed in their bankruptcy case (Exhibit C), showing the Debtors' combined annual income to have been $6,000 in 1992 and $23,000 in 1993.

Maloney declares that he "has investigated the credit history of [Debtors] from credit reporters such as Equifax Credit Information Systems" and has learned that, when purchases were being made from both Levitz and Macy's, Debtors "were similarly engaged in making credit purchases financed by Bank of American [sic], Wells Fargo, Sears, Roebuck & Company and others." No copies of credit reports or similar documentation are provided and no information is given concerning the amounts of such credit purchases or whether any payments were made to those other creditors.

Maloney declares that Macy's and Levitz assigned to GECC all of their respective right, title, and interest in and to the charge accounts established by the Debtors with Macy's and Levitz; no assignment or other document evidencing the contractual relationship between either merchant and GECC is provided.

The copy of the Levitz charge application that appears as Exhibit A to Maloney's Declaration is barely legible, but it is apparent that only one applicant is named, and that is Bui; only one signature is shown, which is completely illegible. The application states the applicant's monthly income from all sources is $3,500. In what appears to be part of the same transaction made on the same day, $1,499.24 was charged to the newly established account for furniture; the charge statement that appears as Exhibit B to Maloney's Declaration identifies the customer as Bui and bears only one signature, which is not legible.

Maloney declares that no payment was made for these charges; nothing is said as to whether any cash down payment was made.

---

**2.** § 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity".

### B. Macy's

With respect to Macy's, Maloney's declaration states (in addition to the fact that Macy's and Levitz assigned their interest in Debtors' accounts to GECC, providing no copy of such assignment) that GECC had a retail factoring relationship with Macy's, but a copy of the underlying agreement is not furnished.

Maloney declares that Debtors made credit purchases from Macy's totalling $553.54 during the period January 12, 1994 through February 19, 1994, and that no payment has been made for such purchases.

### IV.

### DISCHARGEABILITY

GECC has not made out a *prima facie* case for judgment based on the accounts of either Levitz or Macy's.

### A. Levitz

■ There is no evidence that Tran submitted a financial statement of any kind to Levitz, nor that Tran participated in charging the purchase made at Levitz.[3]

As to whether the financial statement by Bui was false, GECC presents evidence that Debtors' combined annual income for the year 1993 was only $23,000, but that does not necessarily mean that Bui's monthly income from all sources in January 1994 (when the purchase was made from Levitz) could not have been or was not $3,500.[4]

### B. Macy's

■ Insofar as the Macy's account is concerned, no allegation of a false financial statement is made but, rather, GECC alleges actual fraud on the part of Debtors by charging purchases knowing that they could not or would not pay for them. The evidence is the same as that offered in connection with the

Levitz account as to a 1993 income of $23,-000, and also Maloney's hearsay statement that he received information "from credit reporters such as Equifax Credit Information Systems" to the effect that Debtors were making other purchases on credit at the time the Macy's charges were made, with no indication of the magnitude of such charges. The latter would carry little weight if it were admissible, since it imparts no information about the amount of charges being incurred and it cannot be determined from Maloney's statement whether Debtors were amassing a great deal of debt or just a little debt; nor does it indicate whether Debtors were repaying some or all of that other debt. The fact that Debtors' income was $23,000 in 1993 does not mean, or even suggest, that they would be unable to repay the $553.54 in charges made at Macy's in January and February 1994.

### C. Both Accounts

■ In addition to the foregoing deficiencies, GECC's claims for relief based on the Levitz account and on the Macy's account suffer from a fatal defect that is common to both.

■ A necessary element under both § 523(a)(2)(B) (false financial statement) and § 523(a)(2)(A) (actual fraud) is reasonable reliance on the part of the creditor, *In re Siriani*, 967 F.2d 302 (9th Cir.1992). "Reasonable" reliance for purposes of dischargeability is more properly referred to as "justifiable" reliance, *In re Kirsh*, 973 F.2d 1454 (9th Cir.1992) ("*Kirsh*"), a standard that is, at least in substantial part, subjective:

> ... the standard is not that of the average reasonable person. It is a more subjective standard which takes into account the knowledge and relationship of the parties themselves. Thus, "a person of normal intelligence, experience and education ...

---

3. To any extent that Debtors' marital status may be relevant, GECC does not provide evidence as to whether they were husband and wife at any time. Such marital status can be inferred to have existed on April 28, 1994 (the date on which the Chapter 7 case was commenced) from the fact that § 302(a) permits only spouses to file a joint petition for relief under Title 11, but not as of any other date.

4. The Court is not holding that an inference that Bui's income was not $3,500 at the time of the purchase would be inappropriate in this default situation if GECC otherwise demonstrated a *prima facie* case.

may not put faith in representations which any such normal person would recognize at once as preposterous. . . ." [citation omitted]. At the same time, the standard does protect the ignorant, the gullible, and the dimwitted, for " 'no rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool.' " [citation omitted].

*Kirsh,* at 1458.

Here, the issue is not whether reliance was justifiable, but whether there was any reliance at all. Maloney declares that GECC and Levitz "justifiably relied on the aforementioned written credit application submitted by defendants; had plaintiff known the true and correct facts as to defendants' financial condition, plaintiff would not have provided the purchase money financing benefit [sic] of the defendants. As a result, plaintiff has been proximately damaged by the defendants' conduct. . . ."[5]

Maloney says nothing about reliance by GECC and/or Macy's with respect to the charges made at Macy's.

There is no evidence that GECC, the plaintiff here, relied upon anything in connection with the Levitz account. Maloney's statement that GECC was misled to its detriment by Bui's application to Levitz raises more questions than it answers. No evidence is offered to show that Bui made any statements, written or oral, concerning Debtors' financial condition or anything else, *to GECC.* Indeed, it seems more likely that Bui was totally unaware of GECC's existence and GECC's financial relationship to Levitz when Bui charged furniture at Levitz. Maloney does not state that, when GECC agreed to purchase this account from Levitz, GECC reviewed Bui's application and determined to buy the account at whatever price GECC paid to Levitz, on the strength of Bui's representations of monthly income.

As to whether Levitz relied, the Declaration of Maloney—a self-described employee of GECC, not of Levitz—does not constitute competent evidence that *Levitz* relied on Bui's application, or that Levitz would not have allowed Bui to charge $1,499.24 for furniture if Levitz had believed Debtors' combined earnings were $23,000.00 per year rather than $3,500 per month. Maloney recites no facts in support of reliance by Levitz and, given his stated capacity, would not be competent to do so in any event.

In a situation such as this, involving a "middleman", reliance should be shown by each link in the chain of parties involved. Assume that A sells a ring to B representing in writing that it is a diamond whereas in fact it is a cubic zirconia. B sells it to C. C sells it to D and D sells it to E who discovers the truth. If A files bankruptcy, does E have a valid cause of action against A under § 523(a)(2)? For bankruptcy purposes, should a debt be non-dischargeable *vis-à-vis* a person or entity to whom no misrepresentation was made? It seems clear that, at a minimum, in the absence of an applicable legal presumption, E would have to show that B, C, D and E all reasonably relied on A's original misrepresentation to B. As discussed above, GECC has not demonstrated through competent evidence that, first, Levitz relied on Bui's allegedly false statement, and second, that GECC also relied; as to Macy's, GECC has not shown that, first, Macy's relied on Debtors' intent and ability to pay, and second, that GECC also so relied.

The case of *Rogers v. Gardner,* 226 F.2d 864 (9th Cir.1955) ("*Rogers*") is instructive on this issue. In *Rogers,* the debtor submitted a false financial statement to Produce Reporter, a company that gathered and distributed credit information to firms in the produce business. Produce Reporter used this statement in determining a rating of the debtor's financial condition. Creditor Williams Farm Company, Inc. ("Creditor") extended credit to the debtor in reliance on the rating. After the debtor filed bankruptcy, Creditor brought an action for non-dischargeability. The Bankruptcy Referee found for Creditor, and the debtor appealed. The Ninth Circuit affirmed the Bankruptcy Referee's decision, finding that the debtor

---

5. The Court assumes that Maloney, in referring to "plaintiff", speaks of GECC, which is the plaintiff in this action.

did not sufficiently rebut Creditor's *prima facie* case of reliance on the false financial statement. The Court of Appeals reasoned that "To find otherwise would permit a bankrupt to issue false statements of financial condition to credit agencies with impunity unless the credit agency expressly acknowledged the author of its information to be the bankrupt." *Rogers,* at 867. The only other cases of which the Court is aware that have held a debt non-dischargeable where the debtor has not directly made a material false statement to the creditor involve credit reporting agencies. In these cases, courts have found third-party reliance on the false statement by recognizing that credit reporting services essentially "re-publish" the false financial statement, and that the debtor should be aware that others will rely upon this republication in making credit decisions. *Id. See also, Bell v. Stafos (Matter of Stafos),* 666 F.2d 1343 (10th Cir.1981), *In re Solari Furs,* 263 F.Supp. 658 (E.D.Mo.1967).

The case at bar is factually distinguishable from the *Rogers* line of cases in that the alleged misrepresentations were made to Levitz, which is not a credit reporting agency. This Court interprets *Rogers* and its progeny to turn on the fact that one who provides information to a credit reporting agency does so for the express purpose of having the agency disseminate that information to one's potential creditors. After having asked an agency to make that information available for consideration by others, a debtor should not be heard to complain because those third parties relied upon representations that the debtor made to the agency and not directly to the third parties. In this case, the only reasonable assumption to be made is that Bui went to Levitz to buy furniture, and not for the purpose of having Levitz receive and disseminate Bui's statements about Bui's financial condition to GECC or anyone else.

A secondary consideration is that, as discussed above, there is no evidence that Bui knew, or had reason to know, at the time the application and charges were made, that Levitz would assign the claim to GECC. Of course, anyone might sell almost anything, whether a house, car, piece of jewelry, negotiable instrument, etc. This Court recognizes that it is common in the commercial world for merchants to sell or factor their accounts receivable, but that practice may well not be suspected by the average consumer. In making a representation to a credit reporting agency, one can fairly be charged with knowledge that the agency is going to disseminate that representation to others who intend to rely upon it, since that is the business of such agencies and their reason for being (in addition to the fact that one provides information to such agencies in the first place for the very purpose of having it transmitted to others). The same cannot fairly be said of a customer who goes to buy furniture from a department store; should the customer be held to assume that the customer's account is going to be transferred by the merchant to a factor, and then perhaps by the factor to a lender, and then perhaps from lender to lender? This Court doubts that most consumers are aware of that feature of modern commercial life. In any event, mere knowledge by a customer that a department store or other creditor might factor or sell its accounts receivable does not render the *Rogers* line of cases applicable.

From a policy point of view, a case such as that now before the Court presents no good reason to depart from the general rule that each element of a claim for relief must be established, including reliance by each party in the chain between the original merchant and its successors.

## V.

### CONCLUSION

GECC's application for a default judgment determining the debts represented by the Levitz and Macy's accounts to be non-dischargeable is denied without prejudice, for GECC's failure to present sufficient evidence to establish a *prima facie* case.