## NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MA KAZAZ,<br><br>                Debtor. | BAP No. CC-22-1028-GTS<br><br>Bk. No. 6:20-bk-13807-SC |
| NEXTGEAR CAPITAL, INC.,<br>             Appellant,<br>v.<br>MA KAZAZ; HOWARD B. GROBSTEIN,<br>Chapter 7 Trustee,<br>             Appellees. | Adv. No. 6:20-ap-01153-SC<br><br>**MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott C. Clarkson, Bankruptcy Judge, Presiding

Before: GAN, TAYLOR, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Appellant NextGear Capital, Inc. ("NextGear") appeals the

bankruptcy court's order entering judgment in favor of chapter 7[1] debtor

---

     *This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

    [1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "LBR" references are to the Local Bankruptcy Rules for the Central District of California Bankruptcy Court.

Ma Kazaz ("Debtor") on NextGear's claims for nondischargeability. After trial, the bankruptcy court determined that NextGear failed to prove its claims under § 523(a)(2), (a)(4), and (a)(6). On appeal, NextGear argues that the court erred by finding no evidence for nondischargeability and by denying NextGear's request to read Debtor's deposition testimony into the record.

We are troubled by the circumstantial evidence of fraud in this case; it is apparent that Debtor or others close to Debtor engaged in wrongdoing. But NextGear bears the burden of proving the elements of its claims. The bankruptcy court properly evaluated the evidence produced by NextGear and concluded that it did not establish the requisite elements of nondischargeability. Our review of the bankruptcy court's factual findings is limited to whether the court clearly erred, and although the bankruptcy court made overbroad pronouncements of law, NextGear has not demonstrated reversible error. We AFFIRM.

## FACTS

### A. Prepetition Events

NextGear is a finance company that provides credit line floor financing for independent automobile dealers. In September 2019, NextGear began a lending relationship with Kar Max, a California corporation owned by Debtor. Kar Max executed a promissory note ("Loan Agreement") under which NextGear would make credit advances to Kar Max for the purchase of motor vehicles. Kar Max granted NextGear a

security interest on all its assets, including all vehicles and inventory, and all of Kar Max's accounts, documents, and records. NextGear perfected its security interest by filing a UCC-1 financing statement. Debtor also signed a personal guaranty of Kar Max's obligation, and a power of attorney on behalf of Kar Max and in favor of NextGear.

Between September 24, 2019, and December 2, 2019, Kar Max purchased twenty-nine vehicles using credit advances from NextGear. Pursuant to the Loan Agreement, NextGear held the titles to each vehicle, and it released the titles upon Kar Max's sale of each vehicle. Kar Max used NextGear's online dealer portal to indicate sales of vehicles and initiate electronic payments. NextGear's process was to release each title upon receipt of a payment corresponding to a sale of that vehicle, or if requested by Kar Max in connection with a financed purchase.

According to NextGear, between November 27, 2019, and December 3, 2019, Kar Max made seventeen payments totaling $735,770.56 for twenty-six vehicles which it purportedly sold. In response to the online payments, NextGear released the titles to the vehicles. However, the initial payment was not honored by Kar Max's bank due to insufficient funds, and NextGear asserts that it received notice from Kar Max's bank that stop payment orders were requested by Kar Max on all seventeen payments. Consequently, none of the payments were processed.

NextGear declared the note in default on December 4, 2019, but it was unable to immediately locate the vehicles allegedly sold by Kar Max.[2] Kar Max did not repay the amounts advanced under the Loan Agreement, and NextGear filed suit in state court.

## B.     The Adversary Complaint and Trial

After Debtor filed a chapter 7 petition in May 2020, NextGear filed an adversary complaint seeking a nondischargeable judgment under § 523(a)(2), (4), and (6), for the amounts due under the Loan Agreement.

NextGear alleged that Debtor engaged in a fraudulent scheme and had no intention of repaying the advances made by NextGear. It asserted that Debtor sold the vehicles, intentionally placed the stop payment orders, and retained the proceeds for his own benefit. NextGear claimed that Debtor had sole control over Kar Max's proceeds and, instead of paying those proceeds to NextGear, embezzled the funds. Finally, NextGear asserted that Debtor's misappropriation of the proceeds constituted a willful and malicious injury.

The bankruptcy court conducted a one-day trial on February 10, 2022. NextGear called three witnesses: notary Sylvia Garkow, Chase Bank representative Jaime Cuevas, and Eric Stephens, a portfolio manager for NextGear. Ms. Garkow testified that she notarized Debtor's signature on the power of attorney.[3] Mr. Cuevas explained the Kar Max bank account

---

[2] NextGear ultimately located and repossessed one vehicle.

[3] The other loan documents were not notarized, but appear to be electronically

4

transactions involving stop payment orders and returns of payments for insufficient funds. He also testified that Debtor had signatory authority on Kar Max's bank account and that Debtor added his brother, Marouf Kazaz, as an authorized signer in July 2018 but later removed that authority.

The bankruptcy court questioned Mr. Cuevas about whether the stop payment orders could be correlated to specific payments made by Kar Max, but neither the witness nor NextGear's counsel could establish a connection.[4]

Mr. Stephens then testified generally about NextGear's business practices and specifically about his interactions with Debtor, the Loan Agreement, and NextGear's transactions with Kar Max. Regarding the Loan Agreement, Mr. Stephens could not verify that Debtor electronically signed on behalf of Kar Max. But he stated that in September 2019, he met with Debtor at Kar Max's location, obtained his identification, and explained how the loan process would work.

Mr. Stephens testified that after NextGear declared a default on December 3, 2019, he returned to Kar Max's location but found no vehicles

---

signed by Debtor on behalf of Kar Max.

[4] After questioning Mr. Cuevas and engaging in a colloquy with NextGear's counsel, the court asked:

> THE COURT: But you don't have any evidence that those stop payments reflected anything to do with checks provided to NextGear?
> COUNSEL: No.
> THE COURT: With respect to this testimony?
> COUNSEL: Not with this witness.

on the lot. He requested Kar Max's business records but was unable to obtain them from Marouf Kazaz or the landlord of the property. The office where Kar Max had operated was empty, and a new dealership had taken over the property.

After examining the witnesses, counsel for NextGear proposed to read excerpts from Debtor's deposition transcript into the record. The bankruptcy court confirmed with NextGear's attorney that the transcript had been lodged with the court, but that NextGear did not designate specific portions which it sought to introduce as evidence or serve the marked transcript on Debtor, and it did not include the transcript on its exhibit list.

Debtor objected to admission of the transcript and argued that he was never provided with a copy of the deposition transcript or given the opportunity to read and sign it. The bankruptcy court then asked counsel for NextGear: "Did you give the deponent a copy of this written transcript with both your questions and his answers, and give him an opportunity to review . . . his answers and make any changes? Did you do that?" Counsel for NextGear replied, "I don't believe so, your Honor," and, after further discussion, acknowledged that he did not have proof that the transcript was delivered to Debtor or his counsel. The court denied NextGear's request to read portions of the transcript into the record.

After the court's ruling, NextGear stated that it had no other witnesses. Debtor did not call any witnesses and closed his case.

**C. The Court's Ruling and NextGear's Motion for Reconsideration**

At the conclusion of trial, the bankruptcy court questioned NextGear's attorney about what evidence had been produced to establish a misrepresentation as part of its § 523(a)(2)(A) claim. After counsel asserted that the misrepresentations were the payments made to obtain a release of the vehicle titles, the court replied:

> The misrepresentation has to occur at the time he entered into the contract . . . . The misrepresentation or the omission has to take place when he signed the contract, not later on when he failed to pay, or sent an insufficient fund check. This action that you have sued him on is for liability of a promissory note and security agreement that he originally signed. For you to prevail on a 523(a)(2)(A) action, you need to demonstrate to me a misrepresentation that was made to induce your client to enter into the agreement, not later activities. That may come under 523(a)(6), but it certainly doesn't come under 523(a)(2)(A).

Hr'g Tr. (Feb. 10, 2022) at 137:23-138:15.

The bankruptcy court then orally ruled that NextGear did not prove its claims for nondischargeability. The court held that NextGear failed to present any evidence of a fraudulent misrepresentation or deceptive conduct by Debtor at the time the financing was obtained. The court reasoned that NextGear did not present evidence that Debtor actually signed the agreement on behalf of Kar Max, or that the stop payment orders and notices of insufficient funds were correlated with specific payments made by Kar Max.

The court further held that NextGear did not present evidence that Debtor initiated the payments or stop payment orders with an intent to obtain the titles, stating: "I have no evidence that [Debtor] did it. Anyone with the passwords, I suspect, could have gotten in. But I have no evidence today that he did that." And the court determined that NextGear failed to present evidence that Debtor knew the representations were false or that he had an intent to deceive. It noted that the focus must be on the totality of the circumstances and whether they create the overall impression of a deceitful debtor, but stated: "Again, I could speculate. I could postulate. I could—But I can't find evidence for that, and that's not the role that we take." The court also determined that NextGear did not present evidence of justifiable reliance on—or damages proximately caused by—Debtor's conduct. The evidence merely supported activities undertaken by Kar Max.

Regarding § 523(a)(4), the court held that, although Kar Max may have held the vehicles in trust, NextGear did not prove that Debtor was acting in a fiduciary capacity. NextGear did not present evidence of larceny or embezzlement because it did not establish that Debtor took property belonging to NextGear. The court reasoned that NextGear failed to show that Debtor took the proceeds or even that Kar Max was no longer in possession of the vehicles or proceeds, stating: "That's the problem with the evidence that I have in front of me, which is the only thing I can operate on. I don't know how [Debtor] stole, defalcated, took the money. You told

8

me that Kar Max somehow benefitted, but you haven't connected the dots."

Finally, the court ruled that NextGear did not prove its claim under § 523(a)(6) because it presented no evidence to establish that Debtor acted willfully and maliciously or committed a wrongful act.

On February 16, 2022, the bankruptcy court issued an order entering judgment in favor of Debtor. The order incorporated the court's oral rulings and further supplemented its reasoning. In addition to its stated reasons for denying NextGear's use of the deposition transcript, the court cited NextGear's failure to comply with LBR 7030-1(b), which sets forth the requirements for offering deposition testimony as evidence.[5] The court also reiterated that, with respect to deceptive conduct by Debtor, NextGear did

---

[5] LBR 7030-1(b) provides:

Unless otherwise ordered by the court, each party intending to offer any evidence by way of deposition testimony pursuant to F. R. Civ. P. 32 and F. R. Evid. 803 or 804 must:

(1) Lodge the original deposition transcript and a copy pursuant to this rule with the clerk at least 7 days before the hearing or trial at which it is to be offered;

(2) Identify on the copy of the transcript the testimony the party intends to offer by bracketing in the margins the questions and answers that the party intends to offer at trial. The opposing party must likewise countermark any testimony that it plans to offer. The parties must agree between themselves on a separate color to be used by each party which must be used consistently by that party for all depositions marked in the case;

(3) Mark objections to the proffered evidence of the other party in the margins of the deposition by briefly stating the ground for the objection; and

(4) Serve and file notice of the portions of the deposition marked or countermarked by stating the pages and lines so marked, objections made, and the grounds indicated therefor. The notice must be served and filed within 7 days after the party has marked, countermarked, or objects to the deposition evidence.

not establish a sufficient link between the non-sufficient funds and stop payment charges on Kar Max's bank account and the payments made to NextGear. As to whether Debtor initiated the payments and stop payment orders, the court noted that NextGear elicited testimony that Debtor's brother was an authorized signer on the Kar Max account, but it failed to provide evidence of when he was removed from the account.

On February 24, 2022, NextGear filed a motion for a new trial, to alter or amend the judgment, or for relief from the judgment, pursuant to Civil Rules 59 and 60(b)(3), made applicable by Rules 9023 and 9024 (the "Reconsideration Motion"). NextGear argued that Debtor and his counsel misled the court by claiming that they did not receive the deposition transcript. It attached a declaration from the court reporting company that arranged Debtor's deposition which evidenced that Debtor's counsel was emailed a copy of the transcript and that he confirmed receipt of the transcript in a telephone conversation. NextGear argued that exclusion of the deposition transcript prevented it from fully and fairly presenting its case and claimed that the transcript would establish: (1) facts about Debtor and his business; (2) that Debtor had sole control over Kar Max; (3) that Debtor was the sole signer on the Kar Max bank account; and (4) that Debtor destroyed Kar Max's business records. It also maintained that excluding the transcript was an overly harsh sanction for its failure to comply with LBR 7030-1.

On March 4, 2022, the bankruptcy court denied the Reconsideration Motion. NextGear timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err by finding that NextGear failed to establish nondischargeability under § 523(a)(2), (a)(4), or (a)(6)?

Did the bankruptcy court err by excluding Debtor's deposition transcript as evidence?

## STANDARDS OF REVIEW

The ultimate question of whether a claim is nondischargeable is a mixed question of law and fact, which we review de novo. *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). However, when the appellant challenges the bankruptcy court's factual findings, we review those findings for clear error.[6] *Id.*

---

[6] NextGear describes its issues on appeal as: "Whether Appellant made a *prima facie* case that Appellee's debt to Appellant should be excepted from discharge" under § 523(a)(2)(A), (4), & (6). Although the bankruptcy court ruled that there was no evidence to prove the nondischargeability claims, it entered its findings of fact and conclusions of law on the record at the conclusion of the trial, pursuant to Civil Rule 52(a), made applicable by Rule 7052. And even if Debtor had made a motion for a directed verdict at the close of NextGear's case, which is appropriately considered a motion for judgment based on partial findings under Civil Rule 52(c), *see Kuan v. Lund (In re Lund)*, 202 B.R. 127, 129 (9th Cir. BAP 1996), and even if the court had ruled on such a motion, we would still review the court's decision for clear error. *Id.* at 130 ("On a motion under [Civil Rule 52(c)], '[t]he judge is the trier of fact and may weigh and

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

A bankruptcy court's decision to exclude deposition testimony is an evidentiary ruling which we review for abuse of discretion. *See Nationwide Life Ins., Co. v. Richards*, 541 F.3d 903, 909 (9th Cir. 2008). To reverse an evidentiary ruling, we must conclude both that there was an abuse of discretion and that the error was prejudicial. *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 351 (9th Cir. BAP 2012), *aff'd*, 604 F. App'x 552 (9th Cir. 2015). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver, Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

---

consider the evidence and sustain defendant's motion though plaintiff's evidence establishes a prima facie case that would have precluded a directed verdict for defendant in a jury case.'" (quoting *Stone v. Millstein*, 804 F.2d 1434, 1437 (9th Cir. 1986))); *Prado v. Stearman (In re Stearman)*, 256 B.R. 788, 791-92 (9th Cir. BAP 2000) ("We review a finding made under Rule 7052(c) for clear error . . . [T]he focus is not on whether [creditor] made a *prima facie* case with respect to [debtor's] (alleged) intent to deceive, for even if she had, the court could have still ruled on [debtor's] motion as it did. Instead, the focus concerns the court's dispositive finding of the fact that [debtor] lacked the intent to deceive.").

**DISCUSSION**

**A.     The Bankruptcy Court Did Not Clearly Err by Finding Insufficient Evidence to Establish Nondischargeability.**

We disagree with the bankruptcy court's ruling that NextGear presented no evidence to prove nondischargeability; the record clearly contains circumstantial evidence of Debtor's wrongful conduct. But we reverse the bankruptcy court's factual findings only if they are clearly erroneous, and we do not substitute our judgment for that of the bankruptcy court. *See Legal Serv. Bureau, Inc. v. Orange Cnty. Bail Bonds, Inc. (In re Orange Cnty. Bail Bonds, Inc.)*, 638 B.R. 137, 149 (9th Cir. BAP 2022). NextGear has not demonstrated that the bankruptcy court's finding—that NextGear failed to establish the elements of its claims—is illogical, implausible, or without support in the record.

**1.     Section 523(a)(2)(A)**

To prevail on a nondischargeability claim under § 523(a)(2)(A), NextGear had to prove, by a preponderance of the evidence: (1) misrepresentation, fraudulent omission, or deceptive conduct by Debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance on Debtor's statement or conduct; and (5) damage proximately caused by its reliance on the statement or conduct. *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1319, 1323 (9th Cir. 1996). A fraudulent omission of a material fact may constitute a false representation if the debtor is under a

duty to disclose. *Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1323 (9th Cir. 1996). In such cases, reliance and causation are established and need not be separately proven. *Id.*; *see also Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1089 (9th Cir. 1996)).

"[A] promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A)." *Rubin v. West (In re Rubin)*, 875 F.2d 755, 759 (9th Cir. 1989). Additionally, a promise can be fraudulent "where the promisor knew or should have known of his prospective inability to perform." *McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 606 (9th Cir. BAP 1996) (citation omitted). In determining whether a debtor had no intention to perform, the bankruptcy court may look to all surrounding facts and circumstances. *Id.* at 607.

NextGear does not allege a fraudulent omission by Debtor; it argues that Debtor made affirmative misrepresentations by entering the payments on behalf of Kar Max with the intent to place stop payment orders.

In rejecting NextGear's argument, the bankruptcy court held that the misrepresentation or omission had to occur when Debtor signed the contract, not when he later failed to pay. But, under the type of revolving credit line at issue here, nondischargeability claims are not limited to misrepresentations made at the inception of the agreement. Subsequent credit advances may be nondischargeable if they are made in justifiable reliance upon a debtor's subsequent misrepresentations, fraudulent omissions, or deceptive conduct. For example, if the payments increased

14

available credit by reducing the outstanding balance, thereby inducing NextGear to make further advances, or if the payments induced NextGear to release vehicle titles, NextGear may have a cognizable claim under § 523(a)(2)(A) if it can prove resulting damage.

We agree with the bankruptcy court that NextGear did not prove fraud at the time of the Loan Agreement.[7] Notwithstanding the bankruptcy court's overly restrictive pronouncement of law, we also agree that NextGear failed to prove a claim for damages resulting from Debtor's alleged fraud in making the payments.

The debt NextGear seeks to make nondischargeable is Kar Max's full contractual obligation, which Debtor guaranteed. Advances made prior to November 27, 2019, when Debtor purportedly made the first fraudulent payment, could not have been obtained by that fraud. *See New Falls Corp. v. Boyajian (In re Boyajian)*, 367 B.R. 138, 147 (9th Cir. BAP 2007) ("For purposes of § 523(a)(2), . . . the timing of the fraud and the elements to prove fraud focus on the time when the lender made the extension of credit

---

[7] On appeal, NextGear suggests that because the Loan Agreement included Borrower's representations that payments would be made from an account with immediately available funds sufficient to cover electronic payments—and Debtor signed the Loan Agreement as president of Kar Max—he made express representations of good funds at loan inception. NextGear did not present evidence of Debtor's intent to defraud at the time of the Loan Agreement, and it did not prove that Debtor was making representations in his individual capacity by signing on behalf of Kar Max. Moreover, in the bankruptcy court and on appeal, NextGear argues that Debtor made misrepresentations by making payments with the intent to place stop payment orders after NextGear released the titles.

15

to the Debtor." (cleaned up)); *see also Reingold v. Shaffer (In re Reingold)*, BAP Nos. CC-12-1112-PaDKi, CC-12-1141-PaDKi, 2013 WL 1136546, at *5 (9th Cir. BAP Mar. 19, 2013) ("misrepresentations made by a debtor to a creditor after the credit has been extended have no effect upon the discharge of the debt.") (citations omitted)); 4 COLLIER ON BANKRUPTCY ¶ 523.08 [1] (Alan N. Resnick & Henry J. Sommer, eds. 16th ed. rev. 2020) ("If the property or services were obtained before the making of any false representation, subsequent misrepresentations will have no effect on dischargeability.").

It is possible that advances made after November 27, 2019, were obtained by fraud. But NextGear did not argue in the bankruptcy court or on appeal that it was induced to make subsequent advances by the allegedly fraudulent payments. Additionally, the record appears to indicate that NextGear made advances exceeding the credit limit prior to the November 27, 2019 payment.

Furthermore, while it may be possible that fraudulent payments induced NextGear to release the vehicle titles, NextGear does not articulate how releasing the titles caused it any damage. Sales of the vehicles would be effective between Kar Max and buyers even if NextGear withheld the titles. *See Brasher's Cascade Auto Auction v. Valley Auto Sales & Leasing*, 119 Cal. App. 4th 1038, 1063-64 (2004). Similarly, NextGear's security interests were not contingent on holding the titles because the vehicles were Kar Max's inventory, and thus, the validity and perfection of NextGear's security interests was exclusively controlled by the California Commercial

16

Code. *See* Cal. Veh. Code § 5907; *Simon v. Chrysler Credit Corp. (In re Babaeian Transp. Co.)*, 206 B.R. 536, 545 (Bankr. C.D. Cal. 1997).

Whether or not NextGear released the titles, its security interests would continue in sale proceeds, and would ordinarily continue in the vehicles unless they were sold to "buyers in the ordinary course of business." *See* Cal. Com. Code §§ 9315; 9320(a). NextGear did not prove that Kar Max sold the vehicles or that its security interests did not continue in the vehicles notwithstanding the purported sales. And it failed to show that Kar Max was not in possession of proceeds which would be subject to its security interests.

Though the record contains circumstantial evidence that Debtor or someone close to Debtor may have engaged in fraud, we do not find the bankruptcy court's factual findings illogical, implausible, or without support in the record. The court did not clearly err by denying relief under § 523(a)(2)(A).

### 2. Section 523(a)(4)

Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." NextGear does not allege fraud or defalcation by a fiduciary; it alleges that Debtor committed embezzlement or larceny.

Embezzlement for purposes of § 523(a)(4) is governed by federal law. *First Del. Life Ins. Co. v. Wada (In re Wada)*, 210 B.R. 572, 576 (9th Cir. BAP 1997). Embezzlement is defined as "the fraudulent appropriation of

17

property by a person to whom such property has been [e]ntrusted or into whose hands it has lawfully come." *Id.* (citation omitted). Embezzlement "requires a showing of wrongful intent." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274 (2013).

To prevail on a claim for embezzlement, a creditor must prove: (1) the property was rightfully in the possession of a non-owner; (2) the non-owner appropriated the property to a use other than which it was entrusted; and (3) circumstances indicating fraud. *Transamerica Com. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991).

Larceny is the "felonious taking of another's personal property with intent to convert it or deprive the owner of the same." *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1205 (9th Cir. 2010) (citation omitted). Essentially, the difference between embezzlement and larceny is whether the defendant initially had the right to possess the property. *See Peltier v. Van Loo Fiduciary Servs., LLC (In re Peltier)*, 643 B.R. 349, 360 (9th Cir. BAP 2022).

NextGear argues that Debtor committed either embezzlement or larceny by inducing it to release titles and failing to repay the credit advances. It suggests that Debtor then either received payment from buyers or fraudulently transferred the vehicles to third parties.

NextGear fails to identify any property belonging to NextGear which Debtor wrongfully took. The funds advanced under the Loan Agreement and the vehicles that Kar Max purchased belonged to Kar Max, not

18

NextGear. The vehicles were subject to NextGear's security interest and Kar Max had contractual obligations regarding disposition of the vehicles which it apparently breached, but NextGear does not explain why that constitutes embezzlement or larceny by Debtor. In other words, NextGear does not identify any of its property that was entrusted to Debtor, and it does not demonstrate that Debtor wrongfully appropriated it.

NextGear argues that under California law, "a lien constitutes a property interest which may be converted." *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 451 (1997). Consequently, "one who wrongfully withholds personal property from one who is entitled to it under a security agreement may be liable for conversion." *Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 428 (9th Cir. BAP 2002). The record does not establish that Debtor withheld the vehicles or sale proceeds, or even that the vehicles were actually sold. And as discussed above, NextGear failed to show that its security interests did not continue in the vehicles and proceeds if the vehicles were sold. The bankruptcy court did not clearly err by determining that NextGear failed to prove nondischargeability under § 523(a)(4).

### 3. Section 523(a)(6)

Section 523(a)(6) excepts from discharge debts arising from willful and malicious injuries to an entity or its property. *In re Ormsby*, 591 F.3d at 1206. The willfulness and malice elements are legally distinct and require separate consideration. *In re Su*, 290 F.3d at 1146-47.

19

Under § 523(a)(6), a debt arises from a "willful" injury when the debtor subjectively intended to cause injury to the creditor or subjectively believed that injury was substantially certain to occur. *In re Ormsby*, 591 F.3d at 1206. A debt arises from a "malicious" injury when it is based on: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Id.* at 1207 (quoting *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001)).

According to NextGear, Debtor caused willful and malicious injury by taking possession of NextGear's collateral and refusing to turn over the vehicles after default. It argues that Debtor converted the vehicles, and conversion under state law can support nondischargeability under § 523(a)(6).

But again, NextGear did not prove that Debtor had possession of the vehicles or that he refused to turn them over upon default. NextGear merely elicited testimony that its representative did not see the vehicles at Kar Max's lot on December 3, 2019. While this is circumstantial evidence of potential wrongdoing by someone associated with Kar Max, it is not conclusive of Debtor's wrongdoing.

Moreover, conversion under California law decides only that a defendant has engaged in wrongful dominion over a plaintiff's property; it does not decide that a defendant caused "willful and malicious" injury. *Peklar v. Ikerd (In re Peklar)*, 260 F.3d 1035, 1039 (9th Cir. 2001). To prevail on a § 523(a)(6) claim based on conversion under California law, NextGear

had to "first establish that a conversion has occurred under California law, and second that the conversion is willful and malicious." *Comcast of L.A., Inc. v. Sandoval (In re Sandoval)*, 341 B.R. 282, 295 (Bankr. C.D. Cal. 2006); *see also In re Thiara*, 285 B.R. at 429 ("Even though a conversion occurred, [creditor] still had to prove that Debtor converted the proceeds with 'wrongful intent.'").

The bankruptcy court determined that NextGear did not present sufficient evidence to establish either that Debtor committed a wrongful act, or that he had the requisite subjective state of mind to make his conduct willful and malicious. The court's finding was not clearly erroneous.

**B.    The Bankruptcy Court did not Abuse its Discretion by Precluding Deposition Testimony.**

Pursuant to Civil Rule 32(a), made applicable by Rule 7032, all or part of a transcript may be used against a party if: (1) the party was present or represented at the deposition, (2) the transcript is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present, and (3) its use is allowed by Civil Rule 32(a)(2) through (8). Civil Rule 32(a)(3) provides that an adverse party may use the deposition of a party "for any purpose."

Bankruptcy courts "enjoy significant discretion in deciding whether to admit party deposition transcripts used by the adverse party." *Tejeda v. Velasquez (In re Tejeda)*, BAP No. CC-18-1227-SFL, 2019 WL 1212354, at *6

21

(9th Cir. BAP Mar. 12, 2019) (citing *Nationwide Life Ins. Co.*, 541 F.3d at 914; *Mark IV Props., Inc. v. Club Dev. & Mgmt. Corp.*, 12 B.R. 854, 859 (Bankr. S.D. Cal. 1981); *Hub v. Sun Valley Co.*, 682 F.2d 776, 778 (9th Cir. 1982)). The bankruptcy court is in the best position to decide whether to admit a prior deposition because "the underlying objective is efficiency at trial without jeopardizing accurate fact finding." *Sun Valley Co.*, 682 F.2d at 778. Thus, if the court applies the correct legal standards, "we will not normally substitute our judgment on the admissibility of a prior deposition." *Id.*

NextGear argues the bankruptcy court erred by refusing to admit the deposition testimony because Debtor's counsel falsely represented that Debtor was never given the opportunity to read or sign the transcript. It maintains that by excluding the testimony, the bankruptcy court prevented it from establishing Debtor's fraudulent conduct, and without the transcript, it was unable to present its case against Debtor fully and fairly. We disagree.

The bankruptcy court did not abuse its discretion by excluding the transcript at trial. Given NextGear's admitted noncompliance with LBR 7031-1(b), and the unresolved question about whether Debtor received the transcript, the court properly exercised its discretion to exclude the deposition transcript in favor of live testimony. *See, e.g.,* C. Wright & A. Miller, 8A FEDERAL PRACTICE AND PROCEDURE, CIVIL, § 2142 (3d ed. 2022) (describing the "long-established principle that testimony by deposition is less desirable than oral testimony"); 7 James W. Moore et al., MOORE'S

22

FEDERAL PRACTICE, CIVIL §32.02[1][a] (2022) (discussing the "strong preference of Anglo-American courts for live testimony"); *Napier v. Bossard*, 102 F.2d 467, 469 (2d Cir. 1939) (Learned Hand, J.) ("The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand.").

It its Reconsideration Motion, NextGear provided evidence that Debtor's counsel misinformed the court at trial; Debtor did receive a copy of the transcript. In denying the Reconsideration Motion, the court held that, notwithstanding Debtor's false statement about receipt of the transcript, it would have excluded the transcript based on NextGear's noncompliance with LBR 7031-1(b), and NextGear's failure to lodge a transcript that satisfied Civil Rule 30(e)(2).[8]

On appeal, NextGear argues that the bankruptcy court abused its discretion by excluding the transcript as a sanction for its failure to comply with technical provisions of the local bankruptcy rules.

"The bankruptcy court has broad discretion to apply its local rules strictly or to overlook any transgressions." *Nunez v. Nunez (In re Nunez)*, 196 B.R. 150, 157 (9th Cir. BAP 1996); *see also Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 842 n.2 (9th Cir. 1994) ("Only in rare cases will we question the exercise of discretion in connection with application of the local rules.").

---

[8] Civil Rule 30(e)(2) requires the deposition officer to provide a certification prescribed by Civil Rule 30(f)(1), indicate whether the deponent requested a review of the transcript, and if so, attach any changes made by the deponent. The transcript lodged by NextGear did not include a certification by the deposition officer.

But when the court sanctions a party based on a failure to comply with local rules, its discretion is narrow, and must meet strict criteria. *Zambrano v. City of Tustin*, 885 F.2d 1473, 1477 (9th Cir. 1989) (requiring sanctions for violation of local rules to be: (1) consistent with governing statutes and court rules; (2) necessary for the court to conduct its business; and (3) closely connected to the need to preserve the integrity of the court's docket.) Sanctions based on local rule violations also require a level of culpability higher than mere negligence. *See Olomi v. Tukhi (In re Tukhi)*, 568 B.R. 107, 112 (9th Cir. BAP 2017).

In denying the Reconsideration Motion, the bankruptcy court explained that its decision to exclude the transcript was based on NextGear's failure to comply with LBR 7030-1 and its repeated and continued failures to follow applicable local rules and court orders throughout the case. It concluded that even if the exclusion of the transcript was case-dispositive, the factors enumerated in *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)[9] warranted the sanction.

NextGear has not demonstrated that the court abused its discretion by excluding the deposition transcript, but even if it did, we do not reverse

---

[9] In *Malone*, the Ninth Circuit held that dismissal for failure to comply with court orders required evaluation of five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." 833 F.2d at 130.

a bankruptcy court's evidentiary decision absent a showing of prejudice. *See In re Mbunda*, 484 B.R. at 351.

NextGear has not made a credible showing of prejudice. It included Debtor on its pretrial witness list and Debtor was present at trial and available to testify. Yet, after the court denied its request to read the deposition transcript, NextGear chose not to call Debtor as a witness. *See Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006) ("[D]istrict courts are reluctant to allow the reading into evidence of [a] deposition if the witness is available to testify at trial, and such exclusion is usually deemed harmless error." (cleaned up)); *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 990 (8th Cir. 1999) ("[T]hough arguably inconsistent with the language of [Civil] Rule 32(a)(2), precluding a party from reading the deposition testimony of an available adverse party is at worst harmless error.").

NextGear argues that it was deprived of a full and fair opportunity to establish Debtor's fraudulent conduct, but we see no reason why the testimony it adduced at Debtor's deposition could not be adduced at trial through live testimony. The bankruptcy court did not abuse its discretion by excluding Debtor's deposition testimony and NextGear has not shown any prejudice by the exclusion.

## C. NextGear's Other Arguments

NextGear argues that if Debtor's brother Marouf Kazaz was the party who engaged in the alleged fraudulent conduct, Debtor should be liable for

25

the debt under principles of estoppel and ratification. Essentially, it claims that Debtor should be estopped from denying his brother's alleged fraud because he did nothing to prevent the theft, did not assist NextGear in recovering the collateral, and allegedly destroyed Kar Max's business records. Alternatively, NextGear argues that Debtor ratified the actions of his brother because Debtor had control of Kar Max's bank account yet remained silent about any unauthorized use of the account.

These arguments are meritless. NextGear made no allegation of estoppel or ratification in its complaint and presented no evidence at trial to support such liability. Moreover, estoppel is akin to implied waiver and can be employed only for defensive purposes. *See Peasley v. Verizon Wireless (VAW) LLC*, 364 F.Supp.2d 1198, 1200-01 (S.D. Cal. 2005) (citing *Matsuo Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 829-30 (9th Cir. 1957)). Estoppel and waiver can preclude the assertion of legal rights but cannot be used to impose legal duties. *Id.* at 1201 (quoting *Groves v. Prickett*, 420 F.2d 1119, 1125-26 (9th Cir. 1970).

If Debtor's brother made payments or sold vehicles on behalf of Kar Max, ratification would merely make Kar Max liable for the actions of its unauthorized agent. *See Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 72-74 (1973) (discussing the effect of ratification under California law). NextGear does not articulate a legal basis for a nondischargeable judgment against Debtor based on these theories.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's order denying NextGear's claims for nondischargeability.